DUDLEY ISOM v. THE MISSISSIPPI CENTRAL RAILROAD CO.

I. CONSTITUTIONAL LAW: JURY: TRIAL BY: AS SECURED BY THE CONSTITUTION.— The provision of the 28th section of the Declaration of Rights, "that the right of trial by jury shall remain inviolate," secures the right of a jury trial, in all cases, in the trial of which a jury was necessary, according to the principles of the common law. See Smith v. Smith, 1 How. 102; Lewis v. Garrett, 5 How. 434; Peck v. Critchlow, 7 Ib. 243; Scott v. Nichols, 27 Miss. R. 94; Smith on Const. L. § 383.

2. SAME: SAME: CASE IN JUDGMENT.—Upon an appeal to the Circuit Court by the owner, from the inquest of a jury assessing the damages accruing from the use and occupation of his land by a railroad company, either party has the right to demand that the issues of fact arising in the cause, shall be submitted to and tried by a jury.

3. SAME: APPROPRIATION OF PRIVATE PROPERTY TO PUBLIC USE: COMPENSATION. The 13th section of the Bill of Rights, which declares that no "person's property shall be taken for public use, without the consent of the legislature, and without just compensation being first made therefor," secures to the owner an equivalent in money for the injury and deprivation of right thus inflicted, to be paid before the appropriation of his property is made; and hence, it is incompetent for the legislature to direct that the owner shall be paid otherwise than in gold or silver, or that the tribunal authorized to ascertain the amount of injury sustained, shall allow as a set-off against his claim for damages, any benefit he may receive from the construction of the public improvement to which his property is proposed to be applied.

4. SAME: SAME.—The value of the property at the time it is appropriated to public use, and the injury then known to result to the owner, as the necessary and immediate consequence of such appropriation of his property, without reference to the unascertained and remote benefits or disadvantages that may or may not accrue in future, is the loss sustained by the owner by the appropriation of his property to the use of the public, and for which he is entitled to compensation.

5. SAME: SAME: LEGISLATURE HAS NO RIGHT TO EXERCISE JUDICIAL POWER.— By the 2d article of the Constitution of this State, the powers of government are divided into three distinct departments—legislative, executive, and judicial—and each of them confided to a separate body of magistracy, and every person or collection of persons, being of one of these departments, is prohibited from exercising any power belonging to another. The ascertainment of the amount of damages sustained by the owner, on account of the appropriation of his property to the public use, is a judicial and not a legislative act; and hence, a direction or instruction by the legislature to the tribunal charged with the exercise of this duty, "that in estimating the damages accruing to the owner of land by the appropriation of it to the construction of a railroad, they shall allow in extinguishment of the claim for damages, the benefits which will result to the owner from the construction of the road through his land," is an invasion of the powers of the judicial department, and for that reason is void.

ERROR to the Circuit Court of Lafayette county. Hon. P. T. Scruggs, judge.

A jury of inquest was summoned, under the provisions of the · eighth section of the Charter of the Mississippi Central Railroad

Company, to assess the damages accruing to the plaintiff in error, by reason of the use and occupation of his land for their road-bed. The jury assessed the damages at $273, but they did not state in their inquest, whether or not, in estimating said damages, they had taken into consideration the advantages accruing to plaintiff in error, by reason of the location of said road on his land. From this inquest the plaintiff in error appealed to the Circuit Court of Lafayette. Upon the filing of the papers in the Circuit Court, the plaintiff in error "claimed and demanded a trial by a jury of said court, of said cause, *de novo*, upon its merits, which the court refused," and the plaintiff in error excepted.

The plaintiff in error then filed the following exceptions to said inquest, and asking that the verdict be set aside.

1. The jurors composing said inquest, differed in opinion as to the amount of damages, and after being unable to agree, one of them added together the amount which each juror thought was proper, and divided the sum thus produced by twelve, and stated the result to his fellow-jurors, and asked all who were in favor of adopting it as their verdict to rise; whereupon all of them arose, and reported said sum as their verdict.

2. The jury made a hasty and incomplete examination of plaintiff's land.

3. James Brown, who was not a sworn officer, was with the jury when they were examining the land, and might have conversed with them.

4. "The jury in estimating such damage as said Isom would sustain by the running of said railroad through his land, over and above the value of the land actually occupied by said railroad, took into estimate what benefit they supposed would result to said Isom, by reason of said road passing through his land, toward the extinguishment of said Isom's claim for damages."

5. The amount of damages awarded by said jury to said Isom, is inconsiderable, trifling, and wholly insufficient.

The railroad company demurred generally to all these exceptions, and their demurrer was sustained to the first, second, third, and fourth, and overruled as to the fifth; upon which they then took issue.

The plaintiff in error then demanded that the issue made upon said fifth exception be submitted to a jury, which the judge refused,

but offered himself to hear testimony on that issue, and decide the same. To this the plaintiff in error excepted, and refused to introduce any evidence before said judge, on said issue. Whereupon the court dismissed his appeal, and Isom sued out this writ of error.

*H. A. Barr*, for plaintiff in error.

The eighth section of the charter provides, that either party may, within ten days, appeal from the decision of the jury to the Circuit Court, and that the Circuit Court shall proceed thereon, as in cases of appeals from the board of police in this State, in relation to county or State roads. Appeals from the board of police to the Circuit Court are by bills of exception, or *certiorari*. Hutch. Code, 712.

In this case, the appeal was by *certiorari*, by agreement of counsel, "provided that *certiorari* be in law permitted."

An appeal by *certiorari* is not only in law permissible, but it is the only mode by which an appeal could have been taken. An appeal by bill of exceptions is excluded by reason of the fact, that no one is authorized by the charter to sign and seal a bill of exceptions.

What, then, was the effect of the appeal by *certiorari* and how should it have been proceeded with in the Circuit Court?

In the case of *County of Yallabusha* v. *Carboy*, 3 S. & M. Rep. 548, this court expressed the opinion that an appeal by *certiorari*, from the board of police to the Circuit Court, would give a trial upon the whole case, facts and law, in the Circuit Court. It was well remarked by the court, that it would have been unnecessary and superfluous to have added the words, "or by *certiorari*," if it had been the object of the legislature to confine the Circuit Court to matters of law arising upon exceptions.

When a cause is removed by *certiorari* from an inferior to a superior tribunal, it is tried and determined in the superior tribunal as if it had originated there. 2 Bacon's Abridgment, 162–165.

It is true, that upon an appeal to the Circuit Court in a county or State road case, the questions decided by the jury do not come before that court; for the appeal is not from the jury, but from the board of police. Here the appeal is from the decision of the

jury.   As in the one case, all that was tried or considered by the board of police, is also tried and considered by the Circuit Court— so all that was considered by the jury, should be tried by the Circuit Court, in the other case.

According to the charter, a jury is directed to be summoned by the sheriff, to go upon the land and estimate the damages.   Neither party can challenge a juror.   No one is authorized, or permitted, to direct them in matters of law.   They are left entirely to the mercy of their own ignorance.   Is it not reasonable to presume, that it was the intention of the legislature to give an aggrieved party a trial *de novo*, where exceptional jurors might be challenged, and ignorant jurors instructed by a judge ?

The first exception to the verdict shows, that it was not based upon a conclusion arrived at by reflection and interchange of views, and is within the mischief on account of which the rule was adopted. *Parham* v. *Haring*, 6 S. & M. Rep. 60.

The second exception shows, that the jury did not do their duty, and could not have done what they were sworn to do.

The fourth exception shows, that the jury simply allowed Isom a cash valuation for the land actually occupied by the railroad.   Any and all other damages sustained by the running of the road through his land, were set off against the supposed benefits he might receive from the road.   In the case of *A. S. Brown* v. *Thomas Beatty*, 34 Miss. R. 227, this court determined that a party is entitled not only to the cash value of his land, but to indemnity for the damage done to his adjacent land, consequent upon the location of the road; *and that too in cash*, and not in railroad advantages.

The issue made upon, on the fifth exception to the verdict, should have been tried by a jury.   All issues of fact, in the Circuit Court, must be tried by a jury.   *Scott* v. *Nichols*, 5 Cushman R. 95.

*H. W. Walter*, for defendant in error.

The first and third assignment of errors are the same.

The proposition contained in them is, that a jury should have been empanelled in the Circuit Court to assess the damages of plaintiff in error.   The eighth section of the charter of the company provides (Session Act, 1852, p. 69), that a jury of inquest of twelve freeholders shall be summoned; shall go upon the land to be condemned,

and shall assess the damages. The charter contemplates that the jury shall make their inquest from actual inspection, the only manner in which it could be fairly and properly done. This is the true rule, and has been so held in many cases similar to the present. *Clarksville & Hopkinsville Turnpike Co.* v. *Atkinson*, 1 Sneed, 426; *Walker* v. *Boston & Maine R. R. Co.* 3 Cushing, 1; *Troy & Boston R. R. Co.* v. *Lee*, 13 Barbour, 169. In this last case, the Supreme Court of New York say, " The first thing the jury are requested to do is to review the premises: thus, their own senses are made to testify. The information thus acquired, it is impossible to bring before a court of review. . . . When the original jurisdiction is to be exercised in this way, it is impossible, from the very nature of things, that there should be anything like a regular judicial review." The same court (per Bronson, J.), in the case of *William* and *Anthony Street*, 19 Wend. 678, says, " That no inquiry can be had in a court of review as to the question whether the commissioners had estimated damages too high or too low."

Yet the court below offered to hear testimony to show that the damages were grossly inadequate, so that it might set aside the inquest, if that fact were established. It offered more than the law required, and plaintiff in error refused to accept it. Certainly this was not error. See, to the same point, *Gould* v. *Vt. Cen. R. R. Co.* 19 Vt. R. 478; reported in 1 Amer. Railway cases, 220; 8 Wend. 85; 1 Bald. 222; 7 Hammond, 112; 3 Watts, 295. See also *Willing* v. *Baltimore R. R. Co.* 5 Wharton, 460.

The error assigned as to sustaining the demurrer to the first exception is certainly untenable. One member of the jury proposed a certain sum as the verdict, and it was accepted by all. There had been no agreement before the proposition, that the sum to be ascertained, should be the verdict; nothing of the kind. I suppose that in all cases of unliquidated damages, some one of the jury must propose an amount as verdict, and the others assent. This is very different from the case of *Parham* v. *Harney*, 6 S. & M. 55, where the jury agreed that the aggregate of each juror's assessment, divided by their number, should be the verdict. This was leaving the matter to chance, and agreeing to render, as their verdict, an amount which no one at the time of the agreement either knew or could know. In that case, the improper agreement to accept what

chance should give, as verdict, vitiated that verdict; but, in the case at bar, the sum was proposed, its exact amount known, and it was accepted, without any previous illegal contract.

The second exception was bad. The jury could draw information from any source, either sworn or not sworn. Their senses were their guide, and their verdict could not be vitiated by any conversation they might have had with one not of their number, much less by such person being with them.

The third exception is so fallacious, we presume it is not seriously pressed. The verdict of every jury on every issue of fact would be worthless if we might be permitted to show that the jury only gave a careless and insufficient examination of the testimony, &c.

The fourth exception to the inquest is, we presume, the main point relied on by plaintiff in error. This exception was entirely too uncertain for an issue. The only thing that does appear to be certain about it is, that the jury allowed Isom the full value of the land taken, irrespective of the provision of that portion of the 8th section of the charter, the constitutionality of which, has been called in question. We believe this or any other court, would hesitate to decide a constitutional question upon a point so uncertain and indefinite as that presented in this exception. What were the damages alluded to in it? Was it the noise and smoke of the cars, or the loss of the quiet dulness of many a rustic log house? Was it that millions of men in pursuit of business or pleasure would speed annually over the spot; or that an occasional Irishman would be found there as a "section hand?" If so, all these would be but incidental damages, which a jury could not well weigh, or if they did, that they might offset by incidental advantages, equally as uncertain. But what were the advantages spoken of by the exception? Was it that the side ditches of the road-bed had drained an impassable bog, and reclaimed valuable and fertile land?

It is all too uncertain, vastly too uncertain, to raise a grave constitutional question for the determination of this court. We insist that the court below acted correctly in sustaining the demurrer on this ground.

On an unknown sea, with no port to make, I cannot well adjust the compass, or trim the sail. Should the court venture on "this uncertain sea," with Mr. Barr as pilot, he will point to the case of

*Brown* v. *Beatty*, as the polar star to direct his course. With that decision I cannot quarrel. The opinion delivered in it is able, lucid, forcible, challenging respect. There is but half a sentence in that opinion, that does not support the case at bar. Here the jury allowed the damages for the land taken; there the court says, "that Beatty was entitled to the cash valuation of his land, when the assessment was made;" but adds, "and also to be indemnified for the damage to his adjacent land, consequent on the location of the road." We beg leave to submit a few remarks on the latter branch of this sentence, or proposition.

We believe the true rule is laid down in the thirteenth article of the Bill of Rights, where it declares, that no person's property "shall be taken or applied to the public use, without the consent of the legislature, or without just compensation being made therefor." You shall make just compensation for the property taken. That compensation, is the market value, without any mere incidental value which the owner places upon it. If it becomes necessary to take my horse, his market value shall be paid me, without reference to the fact that I, or my children, have for him a peculiar attachment, and that he will come at my bidding, and obey my command, more readily than that of another. If it become necessary to take my slave, his market value shall be paid me, without reference to the fact, that he is the strong man of my force, and the residue of my number are less valuable from his loss. If my land be taken, its just value shall be paid, without reference to the fact, that I may prize it for its quiet, and love it for its swamps. The Bill of Rights gives us the true and only rule. It is clear, and leads to no embarrassment. Abandon it, and at once you are afloat on an unknown sea, without chart, compass, or rudder. Uncertain, incidental, extraneous damage, a something intangible, comes up before the jury, to embarrass and confuse. Uncertain, incidental, and extraneous benefits, equally as intangible, press upon them, to confuse and embarrass. You can adopt no standard but the clear and explicit one given by the constitution : to pay for that you get. Give the damage which the owner sustains by the appropriation. If, however, a different rule must be adopted, take the one established in bar, to pay for the property appropriated, and let incidental damages be offset by incidental advantages. See *James*

*River Canal* v. *Turner*, 9 Leigh. 313.   See also the following authorities on this constitutional question : *Woodfolk* v. *Nashville & Chattanooga R. R. Co.* 2 Swan, 422; *Jacob* v. *City of Louisville*, 9 Dana, 114; *Meacham* v. *Fitchburg R. R. Co.* 4 Cushing, 291; *Pennsylvania R. R. Co.* v. *Hester*, 8 Barr's R. 445; 13 Barbour, 169; 2 N. Jersey, 495.

HARRIS, J., delivered the opinion of the court.

Upon the application of the defendant in error, a jury was summoned, under the provisions of its charter, to assess or "value the damages" which the plaintiff in error would sustain by the use or occupation of his land, &c. From their "inquisition," the cause was taken to the Circuit Court, for revision, and thence to this court.

The plaintiff in error assigns the following causes : —

1st. That the court below refused to allow the case to be tried by a jury in the Circuit Court.

2d. That the court below sustained a demurrer to the first, second, third, and fourth exceptions to the verdict of the jury of inquest.

3d. The court refused to allow the issue on the fifth exception to said verdict, to be tried by a jury.

The first and third grounds of error involve the question, whether the plaintiff in error was entitled to have his case submitted to a jury in the Circuit Court, under the 28th section of our "Declaration of Rights," which declares : "The right of trial by jury shall *remain* inviolate."

The peculiar phraseology of this section will naturally suggest the idea, that it has reference to an existing state of the law securing this right, at the time of its adoption.   It is to "*remain* inviolate."   This implies, that under some system, previously in force, this right, of trial by jury, *was* "inviolate;" and to this system we must have reference, to ascertain the extent and meaning of this prohibition against encroachment on "the principles of liberty and free government."

Prior to the year 1802, the territory now embraced in the limits of this State was included within the limits of the State of Georgia. By the deed of cession of that State, this territory was transferred

to the United States; and in the year 1817, under the Act of Congress of the 1st of March of that year, authorizing the formation of our State Government, the first Constitution of Mississippi was formed.

In the Declaration of Rights is to be found the same section above quoted, and since adopted into the Revised Constitution of 1832.

Prior to the adoption of the first constitution, under the territorial form of government, imposed by Congress, the Ordinance of 1787, except the last article, was extended to the Mississippi Territory; and by the second article of that ordinance, the inhabitants of this territory were declared to be entitled to the benefit of "trial by jury."

In *Smith* v. *Smith*, 1 How. 102, it was said, "The right of trial by jury, as it exists here, is derived from the common law . . . . . and must extend as far as it did at common law." And although the decision on the main point involved in that case has been since overruled, yet this principle has been repeatedly recognized by this court.

In the case of *Woodward* v. *May*, 4 How. 389, trial by jury was not refused, though the act authorizing summary judgment in favor of a surety against his principal, *on motion*, was declared constitutional.

In *Lewis* v. *Garrett's admr.* 5 How. 434, it was said by the court, that "the Bill of Rights of the people of this State, which declares that the right of trial by jury shall remain inviolate, has never been held to extend to questions in the trial of which a jury is not necessary, by the ancient principles of the common law; and the constitutionality of the act authorizing summary proceedings against the sheriff and his sureties, on their bond, is sustained upon the ground that trial by jury is not thereby denied; but the plaintiff in error (the sheriff) waived his right to such trial, by not demanding it."

In *Peck* v. *Critchlow*, 7 How. 243, the statute authorizing judgment on bonds for the replevy of property, taken by distress for rent, on motion to the court, is held constitutional; but there is no intimation that the parties are not entitled, *upon their demand*, to the right of trial by jury.

And in the case of *Scott* v. *Nichols*, 27 Miss. R. 94, upon a motion by a surety in a judgment, against his principal, in the Circuit Court, under the statute authorizing summary judgment, while it is held that the act is constitutional, yet the court says, "In practice the court should never refuse the party the privilege of a trial by jury, if desired. . . . . . Issues of fact in this class of cases, must be tried as all other issues of fact are tried, in circuit courts, by a jury, which may be impanelled under the authority of the court, for the purpose of ascertaining the truth of the facts upon which this judgment is to be pronounced."

For a very clear and concise statement of the doctrines of the American courts on the subject, reference may be had to Smith's Commentaries on Constitutional Construction, p. 550, § 383, *et sequitur*, and cases cited.

Nor are these principles and views at all affected by the cases cited by defendant in error. As in New Hampshire, where their constitution secures trial by jury, "*as heretofore practised and used*," and it had been "*practised and used*" nearly a century and a half before the adoption of her constitution, to lay out highways and assess damages by a committee, without the intervention of a jury, it was held that a jury was not necessary. *Backus* v. *Lebanon*, 11 N. H. R. 19. The cases referred to, have relation to the peculiar provisions of the constitution and laws under which they are made, and afford no authoritative guide, therefore, in the construction of our constitution.

We shall only notice the fourth exception, to the verdict of the jury of inquest.

The fourth exception states that the jury, in estimating plaintiff's damages, took into consideration the benefit they supposed would result to him, by reason of said road passing through his land.

This point involves the constitutionality of the eighth section of the defendant's charter, so far as it requires the jury, in estimating the damages, to take into the estimate the benefits resulting to the owner, by reason of the road running through his land, "towards the extinguishment of his claim for damages."

The spirit and policy of our institutions, are at war with the doctrine of legislative omnipotence. Ours is a government founded upon an express, written compact, reduced to exactitude and cer-

tainty, expressive of the sovereign will of the people, fixing the limits and marking the bounds of legislative, executive, and judicial powers ; our constitutions all originated in a spirit of distrust of governmental power, and from a conviction that, unrestrained, its tendency was to despotism. But, notwithstanding these facts, the legislative and judicial history of this country, especially in relation to these great corporations, or whenever works of great public utility or necessity come in question, chronicles one continued series of encroachments on the rights of the citizen. See Smith on Constitutional Construction, 443 and 490. The people of Mississippi, profiting, or rather *intending* to profit, by the warning examples afforded in the older States (where the limitation upon the ancient power of *eminent domain,* had only furnished a pretext for evasion), seemed to think they had closed the door against these invasions on the rights of private property, when in their organic laws they declared, " nor shall any person's property be taken or applied to public use without the consent of the legislature, and without just compensation being *first* made therefor."

But the natural tendency of power and wealth to accumulate inordinately, the strong proclivity of every department in popular governments, to consult the *good* of the many, at the expense of the *rights* of the few, here as elsewhere, in all time past, leave but little hope that the utmost caution, formally embodied in written constitutions, will ever secure that perfect protection to individual right, which was designed, and is desired, by the great body of the people. Smith's Commentaries, § 335.

Hence the great necessity, on the part of the judicial department, to scrutinize well, not only the conduct of the other departments, in cases appealing to it for protection against such encroachments, but especially to guard itself against the natural influences, which the clamors of the powerful many are calculated to exert. So that the humblest, weakest citizen, claiming a legal right, may assert it, against the interests or combinations of the many, or the public even, with a full confidence that neither public necessity, public utility, nor public convenience, the pleas of all despotism, shall prevail against a single private right, secured by our constitution and laws.

Premising thus much, in answer to the many precedents which

may be invoked from other States to invite a disregard of private right here, we will proceed to examine the clause of the charter in question by the light of our own constitution. Smith's Commentaries, § 335.

The moment then that private property is taken for public use, nay more, "*before* any person's property can be applied to public use" "just compensation" shall "*first* be made." The obligation of the State is then *immediate;* its duty to compensate, becomes a debt, as soon as the amount is ascertained, and its' duty to pay *in money*, binding.  12 Wheaton, 265, 339; Story on the Constitution, § 1366.  "In *Van Horne's Lessees* v. *Dorrance*, 2 Dallas R. 313, it was held, that no 'just compensation' could be made, except *in money*."  See Smith's Constitutional Construction, 468, § 315, 318; Angell on Water-courses, 40; *Thompson* v. *The Grand Gulf R. R. & Bkg. Co.* 3 Howard, 249.  Money is the only standard of value known' to our constitution.  It is not in the power of the State to make anything but gold or silver coin a tender in payment of debts.  *Stewart* v. *Raymond R. R. Co.* 7 S. & M. 575.

If the State could, under this prohibition, fix, at her pleasure, the character of the compensation by any other standard of value, this provision would be nugatory; for, it would make her discretion the measure of compensation, at last.  Smith's Commentaries, 470, § 318; 3 Howard Miss. R. 249.

The "just compensation, *first* made," means an 'equivalent in money for the injury or deprivation of right thus inflicted; that equivalent should not only be in money, but should be immediate; that compensation is the *present injury sustained by such deprivation of right*, without regard to future or prospective benefits, or to the unreal advantages *likely* to accrue, on account of the contemplated construction of the road in the future.  2 Kent Com. 415, note.

For the legislature to provide for the assessment of damages by a jury, and then to require of the jury to extinguish the amount of the claim for damages found by them, by prospective railroad benefits, which may never occur, and, in most instances, are never realized, would be a mockery of "trial by jury," and a "compensation" wholly unauthorized by the constitution.  If the legislature may say that any part of the plaintiffs' claim for "compensation" may be extinguished by the imaginary projection' of a railroad in

space, an air-line, where not a stick of timber or a shovelfull of dirt have been removed, we cannot see by what moonshine standard of value they may not order the jury to extinguish all claims for "compensation," by the citizen, against these monopolies.

This court has held, in the case of *Beatty* v. *Brown*, Opinion Book, not yet reported, that a party is entitled not only to the cash value of his land, but to indemnity for the damage done to his adjacent land, consequent on the location of the road; and that too in cash, and not in railroad advantages. See p. 22, Opinion Book.*

" He was entitled to be paid in money. It was clearly as incompetent for the legislature to prescribe in what he should be paid, as to prescribe how much or how little he should receive. Manifestly, a party whose property has been taken and appropriated to public use, in the construction of a railroad, cannot be compelled to receive, as a compensation, the estimated enhancement in the value of his remaining property. The cash value and the actual damage are the true standards by which to determine the compensation to which, in such cases, the party is entitled."

The rule held by this court is this : that, under our constitution, the owner of the land is entitled to "just compensation" for the damage he sustains, by the application of his land and property to the public use, *at the time* the public make the appropriation of his private property.

The value of that property in market *at that time*, and no other ; and the injury *then necessarily known* to result to the owner, as the necessary and immediate consequence of such public use of his property, without reference to the uncertain or remote benefits or disadvantages that may or may not occur in the future, is what (in legal contemplation) the owner loses. Whatever is *then* incapable of *definite ascertainment*, but rests merely on conjecture, possibility, or probability, dependent on the future, cannot be taken into the estimate by any rule of "just compensation." It cannot be "*just*" to award "compensation" for injuries that may never happen ; nor, on the other hand, can it be "just" to compensate *present injury*, or deprivation of right, by the probable or possible benefits which may result, at some *future* time, from what is now an admitted injury. 5 Dana Kty. R. 28 ; 7 Ib. 81 ; 9 Ib. 114.

* See Brown v. Beatty, 5 George, 227.

To say that the owner shall be paid at any other time ; or in anything else than the measure of value known to the constitution; or that he shall receive more or less than the loss or injury *then* capable of definite inquiry and ascertainment ; or that his claim to this " compensation" shall be extinguished by the probable benefits which, in the future, may result from the construction of a road, which may not be finished in " sixteen years" (the time limited by the charter), cannot, by any fair interpretation of the constitution, be regarded as "*just* compensation, *first* made." This provision of the charter, therefore, which requires " the jury, in estimating the damages, to take into the estimate the benefit resulting to such owner by reason of such road passing through his land, towards the extinguishment of such claim for damages," is subversive of the rights intended to be secured by this clause of the constitution, and to that extent is void.

But again, in the very next section succeeding this clause, in the Declaration of Rights (section 14), it is declared, " That all courts shall be open, and every person, for an injury done him, in his lands, goods, person, or reputation, *shall have remedy by due course of law;* and right and justice administered, without sale, denial, or delay."

To guard against transgressions of the powers delegated to the three departments of the government—legislative, executive, and judicial—it is, in conclusion, expressly declared, that everything therein contained is excepted out of the general powers of government, and shall forever remain inviolate; and that all laws contrary thereto, or to the subsequent provisions of the constitution, shall be void. The 1st section of the 2d article of the constitution, thus proceeds to divide the powers of government not thus excepted and reserved, into three " distinct departments," and to confide them each to a " separate body of magistracy," to wit : the powers that are legislative, to one; those that are judicial, to another; those that are executive, to a third.

It then immediately forbids that any person, or collection of persons, being of one of their departments, shall exercise any power, properly belonging thereby, to either of the others.

The legislature may not, therefore, exercise powers which, in their nature, are judicial; or close the courts, or forestall the citi-

zen, in his *remedy* therein, by *due course of law*, for injuries to his lands or goods.    The right of the legislature or the State, by law, to apply the property of the citizen to the public use, and then to constitute itself the judge in its own case, to determine what is the "just compensation" it ought to pay therefor; or how much *benefit* it has conferred upon the citizen by thus taking his property without his consent; or to extinguish any part of such "compensation," by prospective conjectural advantage; or, *in any manner*, to interfere with the just powers and province of courts and juries in administering right and justice, cannot for a moment be admitted or tolerated under our constitution.    If anything *can be* clear and undeniable, upon principles of natural justice, or constitutional law, it seems that this must be so.

The right to decide, whether benefits resulting, or likely to result, to the owner, from a railroad passing through his land, is the "*just compensation first to be made*," within the meaning of the prohibition in the constitution; or whether such benefits may be pleaded, as a legal tender, in payment of a debt, or demand, for such "compensation;" or, as a legal offset, payment, or "extinguishment" of the claim for damages, under our constitution, is a judicial, and not a legislative, power; one belonging to courts and juries, and not to law-makers, or legislatures, under our system of government.    In this view, therefore, it is equally clear and undeniable, that this *direction and instruction* to the jury, by the legislative power, was an invasion of the powers properly belonging to the judicial department, expressly forbidden by the constitution, and therefore void.

For these causes, we think, the judgment should be reversed, cause remanded, and a *venire de novo* awarded in the Circuit Court.