CITY OF JACKSON *v.* CLARK.[*]

(In Banc.   Oct. 8, 1928.)

[118 So. 350.   No. 27189.]

732

*Corpus Juris-Cyc References: Juries, 35CJ, section 12, p. 147, n. 94; section 128, p. 213, n. 39; p. 214, n. 53, 56; section 145, p. 224, n. 20; p. 225, n. 26; Municipal Corporations, 44CJ, section 3703, p. 939, n. 76; On constitutional provision that right to jury trial shall remain inviolate, see 16 R. C. L. 196; 4 R. C. L. Supp. 1046.

*Morse & Bryan,* for appellant.

*Ross R. Barnett* and *James W. Cassedy, Jr.*, for appellee.

Argued orally by *Harry M. Bryan,* for appellant, and *Ross R. Barnett,* for appellee.

PACK, J. This is a suit for personal injury. Appellee recovered judgment against the city of Jackson in the county court for two hundred fifty dollars. On appeal to the circuit court this judgment was affirmed, and comes here from that court. The evidence was in conflict, but there were sufficient facts to support the judgment. The serious point, however, arises over whether there was error in denying appellant a jury trial in the county court. The pertinent portion of the declaration, as amended, reads as follows:

"Hoskin street is one of the thoroughfares of the said city, or is kept up or maintained by said city, and held out to the public as one of its streets, over which vehicles and pedestrians travel from day to day; that said Hoskin street runs east and west in said city and prior to January 1, 1927, the said city opened up a drainage ditch; said drainage ditch traversed Hoskin street in a northerly and southerly direction; that a plank about twelve or eighteen inches in width, six or eight feet in length, and about one or two inches in thickness, was placed directly across said ditch for the purpose of pedestrians crossing said drainage ditch.

"That due to the fact that said drainage ditch was some eight or ten feet deep the city of Jackson was grossly negligent in placing or *in permitting said plank or planks to be placed* [italics ours] across the drainage ditch for the purpose of pedestrians passing over said ditch, *and especially in permitting said planks to remain across said ditch* [italics ours]; that the city of Jackson knew or should have known by the exercise of reasonable care and skill, that said plank was not securely fastened at the ends nor at the sides, which made it very unsafe as a walkway for pedestrians to cross, or attempt to

cross, said ditch; that the city of Jackson should have known that said plank was likely to turn at any time and precipitate any pedestrian who might attempt to cross said ditch; that on account of the narrowness of said plank the said city of Jackson knew, or should have known by the exercise of reasonable care and diligence, that when said plank became moistened any pedestrian was likely to slip and fall from said plank; that the plaintiff herein when attempting to cross said ditch on or about the 15th day of February, 1927, that she slipped when said plank was not securely fastened, as above set out, thereby causing her to fall six or eight feet, falling on her head, thereby seriously injuring her head, neck, back, and body; that the said plaintiff herein would show unto the court that she, at the time of said accident, was exercising a high degree of care; that the city of Jackson was grossly negligent in failing, neglecting, and refusing to furnish this plaintiff a safe walkway on its public street," etc.

The italicized parts of the declaration were amendments inserted under circumstances that will be referred to herein. Appellee filed the plea of general issue to the original declaration before amendment thereto were made. Neither party requested a jury trial upon filing the declaration and general issue plea.

Upon the issues thus joined appellee, hereinafter referred to as plaintiff, introduced her proof and rested. The appellant, herein referred to as defendant, moved for final judgment, alleging a variance between the declaration and the proof. The county judge overruled this motion. The plaintiff then asked for, and was granted, leave to amend her declaration. The amendment consisted only in the insertion of the italicized parts of the declaration set out as aforesaid. Defendant claimed a material amendment had been made in the declaration, pleaded surprise, and moved for continuance of the case

738

for the term. Motion to continue was overruled, and the case set for trial on the 4th day thereafter during the same term of the county court. Defendant filed three special pleas to the declaration as amended, and in each asked for a jury. The request for jury trial was refused by the court. Special plea No. 1 averred that the planks were placed across the ditch by one King Tillman, for his own convenience; No. 2, that the walkway was reasonably safe, and plaintiff fell because of her own carelessness; No. 3 was substantially the same as the second, except it states that the plaintiff was entirely familiar with the walkway, and that it was equipped with a wire cable handhold or guard. Replications were duly filed to all these special pleas. The cause then proceeded to trial, resulting, as stated, in a judgment for the plaintiff.

Under this situation, was defendant entitled to the jury? To state it another way, had defendant waived its right to a jury? The pertinent portion of the County Court Act (section 8, chapter 131, Laws 1926; section 735, Hemingway's 1927 Code) provides:

"Either party to a suit in the county court may demand a jury but the demand shall be made by the plaintiff if made by him, with the filing of the declaration, and if made by the defendant, *on the filing of his plea, or answer*. But the court may in its discretion allow a jury trial for any cause arising after such event."

The right of trial by jury is a cherished one, and the policy of the courts everywhere seems to be liberal in safeguarding this right against infringement. It was incorporated into our own Constitution of 1890, section 31 thereof providing: "The right of trial by jury shall remain inviolate." See, also, 35 C. J. 147; 16 R. C. L. 198; *Isom* v. *R. R. Co.*, 36 Miss. 300.

This constitutional provision must be interpreted to mean that it shall never be destroyed, annulled, nor so hampered or restricted by legislation as to make the pro-

vision a nullity. It does not mean that it shall be totally immune from all reasonable regulations. Any reasonable regulation, free from arbitrary and unreasonable provisions regarding the enjoyment of the right, will not be a denial or impairment thereof. 16 R. C. L. 196, and authorities cited.

It was evidently the latter principle of law upon which the legislature sought to regulate and prescribe conditions under which a jury will be granted in the county court. Defendant did not challenge the statute as being unconstitutional or unreasonable, but earnestly insists that it was denied a right vouchsafed by the statute.

It is argued that plaintiff went into court charging an act of affirmative, positive negligence on the part of the city in actually placing the defective footway across the ditch, and shifted, by her amendments, to a charge of negligence in failing to maintain a reasonably safe footway; that the defendant was prepared to defend the first without a jury, but, changing the character of the suit, a different defense was required, entitling it to a jury.

We do not think the slight amendments to the declaration rendered it necessary to file additional pleas. The three special pleas would have been entirely proper to the declaration in its original form. Without the amendments the declaration alleges that "Hoskin street is one of the thoroughfares of the said city, or is kept up or maintained by said city, and held out to the public as one of its streets." Knowledge, active or constructive, to the city of the defective sidewalk is alleged, and it further alleges that "the city of Jackson was grossly negligent in failing, neglecting, and refusing to furnish this plaintiff a safe walkway," etc.

It was the duty of the defendant city to keep its streets and public walkways in a reasonably safe condition for persons traveling in the usual way, and exercising due care for their safety. *Higginbottom* v. *Village of Burnsville*, 113 Miss. 219, 74 So. 133.

The original declaration sufficiently charged a breach of this duty. Defendant's failure to request a jury upon filing its original plea constitutes, in our judgment, a waiver of its right to jury trial. We do not mean to hold that there might not be amendments in pleadings so changing the character of suits or defenses as to entitle the opposite party to demand a jury, although none was demanded with the first declaration or plea filed. Such a contingency is amply provided for in the statute quoted, wherein it is said: "But the court may, in its discretion, allow a jury trial for any cause arising after such event." Request for a jury under such a situation would address itself to the discretion of the trial court. There was no abuse of the trial court's discretion in the instant case.

The judgment of the court below will be affirmed.

*Affirmed.*

ETHRIDGE, J. (dissenting): I think the amendments made to the declaration after the plaintiff had rested his original case in the county court were material amendments, and made an entirely different case than the one stated in the original declaration. The original declaration charged the placing of the plank across the ditch as having been done by the city of Jackson; the amended declaration charged the city of Jackson with negligence in permitting the planks to be placed across the ditch at such place and allowing them to remain there. It will be readily seen that the declaration, after its amendment, made other pleading proper that would have been improper to the original declaration.

After this amendment was made by the plaintiff, the defendant reshaped its pleading and promptly demanded a trial by jury. In my opinion, this motion for a trial by jury after the reshaping of the pleading was timely, and a jury should have been allowed under the statute. It is true that "either party to a suit in the county court may

demand a jury, but the demand shall be made by the plaintiff, if made by him, with the filing of the declaration, and, if made by the defendant, on the filing of his plea or answer. But the court may in its discretion allow a jury trial for any cause arising after such event.'' It cannot be said that the filing of the pleas by the defendant after the declaration was amended so as to make an additional charge of negligence was not timely applied for. Under the language of the statute, the defendant is permitted to demand a jury on the filing of its plea or answer. It is, of course, to be construed to mean whenever such a plea tenders issue of some fact alleged in the declaration, and where the declaration, as originally drawn, did not state a case calling for a plea of a particular nature, and afterwards, by amendment, presents a case for such pleading as is proper, it is certainly not too late to demand a jury with the plea. The concluding sentence of the section quoted in the majority opinion, ''But the court may, in its discretion, allow a jury trial for any cause arising after such event,'' shows that it was contemplated that changes might be made in pleadings and issues.

This discretion is not a personal or arbitrary discretion, but a legal, judicial discretion, to be exercised, not at the caprice of a judge, but according to the facts arising when the application is presented. When the plaintiff files a declaration, he cannot, ordinarily, anticipate any defense except one in denial of the demands and rights made by the declaration. If the defendant presents an affirmative defense in confession and avoidance, and the plaintiff desires to take issue upon such affirmative plea or defense, it certainly would be proper for him to have the right, under the statute, to demand a jury when the issue is made up or tendered calling for decisions of issues of fact not anticipated when the declaration was filed.

When the defendant filed its plea of general issue in the present case, it had the right to rely upon the fact that the case would be tried upon the declaration as it then stood, and to deny the allegations of the declaration as then made, so that the plaintiff could not maintain an action. Certainly, the plaintiff was not willing to maintain and risk her action upon the original declaration, but reached the conclusion that it was necessary to present a different ground of liability. Upon amending its plea, the defendant had a right to plead either in general denial to the general declaration or an affirmative defense, or affirmative matter; and it may be that for the first time the defendant saw a necessity for having the issues decided by a jury. It seems to me that it would be unreasonable to say that a plaintiff must be held to have waived the jury when he filed his declaration with no demand for a jury in all possible cases that might arise. Before he should be deprived of his right to a jury, the issues should be made up by the pleadings. Whether a jury should be demanded at all cannot be determined at all in certain cases until a defense is filed making an issue. It would be merely piling up the costs of the litigation without any reason therefor to demand a jury when no issue is made up. But it is more reasonable to require the plaintiff to know the facts pertaining to the matter which he brings into court than it is for the defendant to anticipate cases being made by amendment which are not made by the declaration. The purpose of the statute, so far as the defendant is concerned, is to file with his plea tendering an issue a request for a jury as to the issue so tendered. If that plea is answered by another plea in confession and avoidance, making issuable other facts, then, when the pleading is finally made up, the party should be allowed a jury if he desires one. The sole purpose, as I understand the statute, is to dis-

pense with summoning the jury in such cases in the county court when neither party desires a jury therein.

Section 31 of the Constitution of 1890, providing that trial by jury shall remain inviolate, preserves the right of trial by jury as it then existed in the laws of the state, free from interference by any department of the government. The section itself names the modification which may be made by the legislature to the section. It is a familiar rule of construction of constitutional provisions that they are to be construed in the light of the common law and in the light of the law existing at the time the provisions were enacted into the Constitution. *Inviolate* means that such right shall remain as it is in all substantial particulars. *Wolfe* v. *Martin,* 1 How. 30, and *Byrd* v. *State,* 1 How. 163, announced this construction: That a trial by jury meant a trial by twelve men; and, where the provision was silent as to the number of persons composing the jury, the court must look to the common law to discover its meaning. In *Hunt* v. *State,* 61 Miss. 577, it was held in the trial of a felony case, a consent to try the case with less than twelve jurors was void; and to the same effect were decided the cases of *Scott* v. *State,* 70 Miss. 247, 11 So. 657, 35 Am. St. Rep. 649; *Ex parte, Grossman,* 267 U. S. 87-122, 45 S. Ct. 332, 69 L. Ed. 527 *et seq.,* 38 A. L. R. 131. In this last case the supreme court of the United States announced the same principle in reference to construing the United States Constitution. Chief Justice TAFT, speaking for the court, said:

"The language of the Constitution cannot be interpreted safely except by reference to the common law and to British institutions as they were when the instrument was framed and adopted. The statesmen and lawyers of the Convention who submitted it to the ratification of the Conventions of the thirteen states, were born and brought up in the atmosphere of the common law and thought and spoke in its vocabulary. They were

familiar with other forms of government, recent and ancient, and indicated in their discussions earnest study and consideration of many of them, but when they came to put their conclusions into the form of fundamental law in a compact draft, they expressed them in terms of the common law, confident that they could be shortly and easily understood.''

At page 668 of 1 Cooley's Constitutional Limitations (8 Ed.) this distinguished author and constitutionalist discusses the question saying:

"Accusations of criminal conduct are tried at common law by jury; and wherever the right to this trial is guaranteed by the Constitution without qualification or restriction, it must be understood as retained in all those cases which were triable by jury at the common law, and with all the common-law incidents to a jury trial, so far, at least, as they can be regarded as tending to the protection of the accused.''

At page 676 of this work, the author says:

"Many of the incidents of a common-law trial by jury are essential elements of the right. The jury must be indifferent between the prisoner and the commonwealth; and to secure impartiality challenges are allowed, not only for cause, but also peremptory without assigning cause. The jury must also be summoned from the vicinage where the crime is supposed to have been committed; and the accused will thus have the benefit on his trial of his own good character and standing with his neighbors, if these he has preserved; and also of such knowledge as the jury may possess of the witnesses who may give evidence against him. He will also be able with more certainty to secure the attendance of his own witnesses. The jury must unanimously concur in the verdict.''

In volume 2 of the same work, at page 865, it is said:

"The Constitutional provisions do not extend the right; they only secure it in the cases in which it was a matter

of right before. But in doing this, they preserve the historical jury of twelve men, with all its incidents, unless a contrary purpose clearly appears. The party is therefore entitled to examine into the qualifications and impartiality of jurors; and to have the proceedings public; and no conditions can be imposed upon the exercise of the right that shall impair its value and usefulness."

See, also, 35 C. J., p. 224, section 145.

In *La Bowe* v. *Balthazor,* 180 Wis. 419, 193 N. W. 244, 32 A. L. R. 862, the Wisconsin court held that the legislature was without power by statute to impose a fee, or tax, of two dollars per juror, upon the litigant, in order to obtain a jury trial in a municipal court, and that such imposition violated the constitutional guaranty of right to trial by jury. The language of the Constitution of Wisconsin should remain inviolate. At page 864 of the American Law Reports of this case (110 Wis. 421, 193 N. W. 245), the court said:

"The meaning of the language used in our Constitution must be gleaned from the common law, and this is because of the peculiarity of the language, 'The right of trial by jury shall *remain* inviolate;' that is, it shall continue as it was at the time of the formation and adoption of the Constitution by the people of this state. This right, '*according to the course of the common law,*' was guaranteed to the people of the Northwest Territory by article 2 of the ordinance of July 13, 1787"—i. e., "the inhabitants of the said territory shall always be entitled to the benefits . . . of judicial proceedings according to' the course of the common law."

The quotation in the majority opinion from 16 R. C. L. 196, "Any reasonable regulation, free from arbitrary and unreasonable provisions regarding the right, will not be a denial or impairment thereof," is not in my opinion a correct expression of the law upon the subject. The quotation from Mr. Cooley in this case, above given, is

the true and proper interpretation of the right to regulate trial by jury. No regulation can be made which impairs or restrains the right of trial by jury. Still when such right has been denied, it cannot limit the effect of the Constitution itself. All constitutional provisions designed for the protection of the citizen are to be given a liberal interpretation in order to accomplish the object sought. There is no more valuable right to the people at large, in the Constitution, than the right of trial by jury. It is the Palladium of Liberty, the great security, well calculated to preserve the people from tyrannical acts of either officers or other citizens.

I think, therefore, that the court below erred in refusing to give the appellant a jury trial, and that no harm, would have been done by continuing the case, if that was necessary, until court next met, which would have been a delay of one month, and such delay could not be a serious public handicap in administering justice. It is not sufficient to say that the trial judge may have been fair or impartial in the damages awarded. This is peculiarly the character of action for which a jury trial is provided, and the allowing of a jury trial in such case constituted a valuable right to each litigant, and no denial of this right should be entertained, unless it is clear that injustice was not done in the denial of such right.