# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 94-CA-00289-SCT

*TIM PARKER AND DENISE PARKER,*
*INDIVIDUALLY, AND DANIEKA PARKER, BY AND*
*THROUGH HER NEXT FRIEND AND NATURAL*
*MOTHER, DENISE PARKER*

*v.*

*THE CITY OF PHILADELPHIA, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/16/94 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | DAVID EARL ROZIER, JR. |
| ATTORNEY FOR APPELLEE: | THOMAS R. JONES |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 5/14/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/27/98 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. The Circuit Court of Neshoba County granted the City of Philadelphia summary judgment in this personal injury action by finding that the claims against the city were barred under the doctrine of sovereign immunity. Aggrieved, the appellants have timely appealed.

## FACTS

¶2. On November 4, 1989, Danieka Parker, then four years old, was returning from a friend's house across Evergreen Avenue in Philadelphia, Mississippi. An adult neighbor, Mack Coleman, was escorting his daughter, Kristi Coleman, then six years old, and Danieka across the street. Coleman was holding his daughter's hand, and she was holding Danieka's hand. Coleman looked both ways before crossing the street, and then began to advance. After taking about three or four steps into the street, Coleman said that he again looked up the street, but did not see an approaching vehicle. He testified that overhanging limbs were present which obstructed his view of the road. When Coleman

finally saw the car, he stepped back and pulled his own daughter out of the path of the oncoming vehicle. However, he could not get Danieka out of the way of the car's path. The vehicle struck Danieka, paralyzing her from the waist down.

¶3. Alice Nunn, driver of the vehicle which hit Danieka, testified that she was traveling at about thirty miles per hour at the time of the accident. She also testified that as she drove down Evergreen Avenue, she saw Coleman and the two children on the side of the street. Just as she came parallel with their position, she saw a little dash out of the corner of her eye and heard a noise. Nunn's daughter, who was traveling with her at the time of the accident remarked, "You hit that child."

¶4. On February 19, 1991, Tim Parker and Denise Parker, Danieka's parents, filed a lawsuit individually and on behalf of Danieka, against Mississippi Farm Bureau Insurance Company and the City of Philadelphia, Mississippi. The Parkers settled with Mississippi Farm Bureau Insurance Company and proceeded with the present suit against the City of Philadelphia.

¶5. The Parkers argued that their injuries occurred due to the City of Philadelphia's "unsafe and unreasonable maintenance of the street." The city responded by pleading the defense of sovereign immunity. The city later added the defense of contributory negligence of a third party non-defendant, Alice Nunn. On September 11, 1992, the city filed a motion for summary judgment, claiming that sovereign immunity barred the lawsuit from proceeding. After oral argument on November 20, 1992, the trial court granted the defendant's motion for summary judgment. The following issue is now before us.

## THE LAW

### DOES SOVEREIGN IMMUNITY EXEMPT THE CITY OF PHILADELPHIA FROM LIABILITY.

¶6. Our recent decision in *Hord v. City of Yazoo City*, No. 95-CA-00524-SCT (Miss. Nov. 13, 1997) controls the disposition of this case. We said in *Hord:*

> In 1982, this Court abolished judicially-created sovereign immunity in *Pruett v. City of Rosedale*, 421 So. 2d 1046 (Miss. 1982), ruling that determining the existence and extent of sovereign immunity is the province of the Legislature, not the Court. In 1984, the Legislature responded by enacting a comprehensive tort claims act, providing for a limited waiver of sovereign immunity. Miss. Code Ann. § 11-46-1 *et seq.* (Supp. 1996). However, § 11-46-6 provided that the Act's provisions were not yet effective, and that until such time as they became effective, the law of sovereign immunity would be governed by the common law doctrine as it existed in 1982 before the *Pruett* decision.
>
> On August 31, 1992, we decided *Presley v. Mississippi State Highway Com'n*, 608 So. 2d 1288 (Miss. 1992), wherein we held § 11-46-6 to be unconstitutional because it intended to revive law by reference. Then, in *Robinson v. Stewart*, 655 So. 2d 866 (Miss. 1995), we held that *Presley* was to be applied prospectively only. The Legislature responded to *Presley* by reaffirming sovereign immunity in Miss.Code Ann. § 11-46-3, but then waived said immunity to a large degree in Miss.Code Ann. § 11-46-5. "Miss.Code Ann. § 11-46-5 provides for a waiver

of sovereign immunity as to the State from and after July 1, 1993 and for political subdivisions of the state from and after October 1, 1993, subject to a number of substantive and procedural limitations set forth in later sections of said chapter." *Gressett v. Newton Separate Municipal School District*, 697 So.2d 444, 445 (Miss.1997).

In *Gressett*, we decided that a cause of action that arose on August 26, 1993, over four months after § 11-46-3 went into effect, was surely governed by the statutory immunity annunciated in that statute. We reasoned that the *Presley* holding was not controlling because § 11-46-3 does not contain the constitutionally offensive language present in § 11-46-6.

§ 11-46-6, however, still applies to post-*Pruett*, pre-*Presley* causes of action. In the case *sub judice*, [the plaintiffs'] cause of action arose on [November 4, 1989], before *Presley*, so under *Robinson*, we apply § 11-46-6, which directs us to apply pre-*Pruett* common law. *Morgan v. City of Ruleville*, 627 So. 2d 275, 278-79 (Miss. 1993) (holding that since cause of action arose in 1987, before *Presley*, the trial court erred in applying the tort claims act, but instead should have applied pre-*Pruett* common law).

Under pre-*Pruett* common law, whether a city "enjoys the defense of sovereign immunity depends upon whether the alleged conduct occurred in the exercise of a governmental function or in the exercise of a proprietary function." *Morgan*, 627 So. 2d at 279; *Webb v. Jackson*, 583 So. 2d 946, 952 (Miss. 1991). A city performing a governmental function is immune from a negligence suit, whereas a city performing a proprietary function is not immune from a negligence suit. *Morgan*, 627 So. 2d at 279; *Webb*, 583 So. 2d at 952.

The classifications of those functions which are governmental and those which are proprietary are very general, and are often difficult to define. We have described governmental functions applicable to cities as "activities or services which a municipality is required by state law to engage in and to perform." *Anderson v. Jackson Municipal Airport Authority*, 419 So. 2d 1010, 1014 (Miss. 1982). Conversely, proprietary functions are "activities in which a municipal corporation engages, not required or imposed upon it by law, about which it is free to perform or not." *Anderson*, 419 So. 2d at 1014. "Proprietary activities are those which, while beneficial to the community and very important, are not vital to a City's functioning." *Morgan*, 627 So. 2d at 279.

*Hord*, No. 95-CA-00524-SCT, Slip op. at 1-3.

¶7. The placing of warning signs is within the purview of a city's governmental functions. Therefore, the city is immune from liability under the facts established in this case. Accordingly, we affirm the decision of the trial court.

¶8. **AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., ROBERTS AND SMITH, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., BANKS AND WALLER, JJ.**

**McRAE, JUSTICE, DISSENTING:**

¶9. Contrary to the majority's conclusion, the trial court did err in its analysis. The trial court erred in finding that sovereign immunity precluded suit against the City of Philadelphia in this case. The judgment below should be reversed and this case remanded for a trial on the merits.

**I.**

¶10. The Parkers contend that the circuit court erred in analyzing individual components of their negligence claim to determine whether sovereign immunity would be available to the City. The Parkers' position is that the breaches of duty and claims of negligence should be viewed *en toto*, not as individual claims. The City responds by arguing that the circuit court correctly analyzed the individual claims against the City, that sovereign immunity does apply in this situation, and that the award of summary judgment was wholly proper.

¶11. The threshold question is whether the circuit court properly addressed the City's sovereign immunity defense by looking at individual claims of breach and negligence as presented by the Parkers. However, the City complains that the Parkers have abandoned any assignment of error regarding the City's alleged failure to post signs of warning, erect sidewalks, and enforce speed limits. The Parkers' assignment of error to this Court is singular. Nonetheless, "an assignment of error brings before the Court all matters necessarily incident to the issue specifically assigned." *Gray v. Baker*, 485 So.2d 306, 307 (Miss. 1986).

¶12. Regarding negligence, the Parkers' amended complaint alleged the following:

<u>COUNT ONE</u>

6. Plaintiffs reallege and hereby incorporate by reference and make a part hereto each and every one of the above-numbered paragraphs, inclusive of the above grounds, and would further show unto the Court the following:

7. That Defendant City owes the general public and the Plaintiffs in particular certain duties including, but not limited to, the following:

a. The duty to warn the operators of motor vehicles of applicable speed limitations on roadways;

b. The duty to warn operators of motor vehicles of pedestrians and more specifically of children in the area at play;

c. The duty to warn operators of motor vehicles of changes in conditions of the roadway (i.e., slope, curve, etc.);

d. The duty to warn pedestrians of oncoming motor vehicles;

e. The duty to maintain a sufficiently wide roadway for motorists to take evasive measures or tactics when needed;

f. The duty to provide a roadway for its citizen that is the least hazardous for accommodating pedestrian and motor vehicle traffic at the same time; and

g. The duty to provide for safe passage of pedestrian traffic in the City of Philadelphia and particularly on Evergreen Avenue by the installation of sidewalks or other clearly designated pedestrian easements or passageways.

8. That Defendant City has breached singularly or all of its duties owed to the Plaintiffs. That said breach constitutes negligence on the part of the Defendant City.

¶13. In their complaint, the Parkers did not specifically allege any breach of a duty to maintain streets in a condition so as not to endanger the public in the proper use of the streets. However, the Parkers made such an allegation in response to one of the City's interrogatories:

**INTERROGATORY NO. 5:** Please set out all facts upon which you intend to rely to substantiate the allegation of Paragraph 28 of your [original] complaint where you allege that the City breached said duties to the plaintiffs and this breach constituted negligence on the part of the City.

**ANSWER:** At the time of the accident in question, there were no speed limitation warnings or signs for motorists. There was further *a complete lack of the maintenance of the City's right of way in the area*, including the cutting of limbs, trimming of bushes, etc. There was a complete lack of sidewalks or other pedestrian right of ways which would allow for a harmonious motorist and pedestrian existence on Evergreen Avenue. Also, the design of Evergreen Avenue is such that it is a very narrow street and has a significant change in contour. Evergreen Avenue is not safe.. . .

(emphasis added).

¶14. "One purpose for requiring the proper denomination of pleadings is to apprise the respective parties as well as the court of the nature of the suit presented and the relief sought." *Nelson v. Tullos*, 323 So. 2d 539, 543 (Miss. 1975). When this Court reviews pleadings, substance is considered over form. *West v. Combs*, 642 So. 2d 917, 920 (Miss. 1994). The sufficiency of the complaint must be tested by standards stated in the Rules of Civil Procedure, stating requisites for claims for relief and requiring pleadings to be simple, concise and direct. Miss. R. Civ. P. 8(e)(1). As the commentary to this rule explains:

The purpose of Rule 8 is to give notice, not to state facts and narrow the issues as was the purpose of pleadings in prior Mississippi practice. Consequently, the distinctions between 'ultimate facts' and 'evidence' or conclusions of law are no longer important since the rules do not prohibit the pleading of facts or legal conclusions as long as fair notice is given to the parties.

Miss. R. Civ. P. 8 cmt. Further, this Court has promulgated certain forms to aid in drafting of complaints, including one for a complaint for negligence. Miss. R. Civ. P. app. A, Form 15. This form only suggests that a general statement of negligence be pleaded, along with enumeration of injuries and damages. *Id.*

¶15. In this case, the Parkers stated circumstances, occurrences, and events to support their claims against the City of Philadelphia. Further, the complaint alleged that the City of Philadelphia breached some or all of its duties to the Parkers and that any breach constituted negligence on the part of the City. Moreover, based on the pleadings and discovery responses, the City was on notice that the Parkers would be making a general allegation of negligence which would include a claim that the City failed to maintain its streets safely. In this case, as in most cases, issues are developed based on responses to interrogatories and other discovery requests. Therefore, the trial court should have analyzed the general claim of breach of duty and negligence to determine whether sovereign immunity was applicable.

## II.

¶16. I would further find that the trial court erred in the application of the doctrine of sovereign immunity. The litany of decisions from this Court regarding the distinctions between governmental and proprietary functions can be narrowed down to those which are pertinent here. This Court looks to *Anderson v. Jackson Municipal Airport Authority*, 419 So. 2d 1010 (Miss. 1982), for the clearest distinction between the two functions.

> The classifications are broad, very general, and the line between the two is quite frequently difficult to define. Nevertheless, there are certain activities which courts choose to call "governmental" for which no liability is imposed for wrongful or tortious conduct. These are activities or services which a municipality is required by state law to engage in and perform.
>
> On the other hand, there are activities in which a municipal corporation engages, not required or imposed upon it by law, about which it is free to perform or not. Such activities the courts call "proprietary or corporate." This Court has judicially construed other permissible "public and governmental" activities to be "corporate or proprietary."

*Anderson*, 419 So. 2d at 1014.

¶17. "[A] municipality, in exercising its statutory duty and prerogative of maintenance and repair of its streets, is exercising a corporate function." *Warren v. Town of Booneville*, 151 Miss. 457, 461, 118 So. 290, 291 (1928). A city has an affirmative duty to keep its streets and public walkways in a reasonably safe condition for persons traveling in the usual way and exercising due care for their safety. *City of Jackson v. Locklar*, 431 So. 2d 475, 479 (Miss. 1983); *City of Ruleville v. Grittman*, 250 Miss. 842, 845, 168 So. 2d 527 (1964); *City of Meridian v. Raley*, 238 Myss. 304, 310, 118 So. 2d 342 (1960); *City of Hattiesburg v. Hillman*, 222 Miss. 443, 449, 76 So. 2d 368 (1954); *City of Jackson v. Clark*, 152 Miss. 731, 739, 118 So. 350 (1928). "This duty extends to guarding against defects from overhead as well as underfoot." *Hillman*, 222 Miss. at 449, 76 So. at 370.

¶18. This Court has held that even if the title to trees standing in neutral ground is vested in an adjacent property owner, a municipality, in the exercise of reasonable care for the safety of persons and property in and near its dedicated streets, has the right and is, in fact, *under the duty to remove them*, if they are dangerous. *Id.* There is no reason why a municipality should not be liable for damages to persons where injuries proximately result from the municipality's negligence in permitting a dangerous tree to stand on the right of way of its street.

¶19. "Mere proof of a defective condition in the streets, no matter how dangerous, is not sufficient to show breach of the City's duty to maintain its streets safely." *Locklar*, 431 So. 2d at 479-80. "A would-be plaintiff must go further and show that the City had actual or constructive knowledge of the defect." *Id.* at 480. Where a municipality has notice of a dangerous defect, remedying such a condition is more akin to the City's proprietary function of maintaining its streets in a reasonably safe condition as opposed to its governmental function of controlling traffic flow. A municipality is also amenable to liability in the exercise of its proprietary functions. *Thomas v. Hilburn*, 654 So. 2d 898, 901 (Miss. 1995). The design, construction and maintenance of streets and ditches are clearly proprietary functions. *White v. City of Tupelo*, 462 So. 2d 707, 708-09 (Miss. 1984); *Tucker v. City of Okolona*, 227 So. 2d 475, 476 (Miss. 1969). Where, in the exercise of this function, a city creates an unreasonably dangerous condition, its duty to correct, or in the very least, adequately warn, is no different from that of any other citizen. *See Tucker*, 227 So. 2d at 475. As this Court has previously stated, "it would be tenuous reasoning to say that the maintenance of the street under the traffic light is a proprietary function but the overhead traffic control device is a governmental function." *Id.* at 476.

¶20. A plaintiff, to prove a claim of negligence against a city, must show that: 1) the city had a duty, recognized by law, requiring the city to conform to a certain standard of conduct, to protect those who travel on its roads against unreasonable risks; 2) the city breached that duty, failing to conform to the standard required; 3) the city's conduct or lack thereof caused the resulting injury; and 4) the injury consisted of actual loss or damage resulting to the interests of another. *Couch v. City of D'Iberville*, 656 So. 2d 146, 150 (Miss. 1995).

¶21. Immunity should not attach in this case. The Parkers' negligence claim, which arose in 1989, deals with a failure to warn of a dangerous condition. Although a decision by the City to spend municipal funds on the placement of warning signs may be a governmental function, the City's affirmative duty to maintain streets and keep them safe clearly is a proprietary function. Because the existence of a dangerous condition and whether a warning sign would have constituted proper maintenance of the road are issues which must be resolved by a jury, the trial court erroneously granted summary judgment.

¶22. The complaint in the case at hand presents the issue of a municipality's duty to warn of known dangerous conditions. The failure to warn of a known dangerous or unusual condition in the road, or within reasonable proximity of the road such that it presents a likelihood of injury to those using the road in an ordinary manner, falls under the category of maintaining and repairing defective conditions of the road. In the same way, the complaint of negligence deals with the city's failure to remedy a condition created by the city--the condition of Evergreen Avenue.

¶23. In the case sub judice, the Parkers met the requisite elements needed to submit a case of negligence to the jury. The Parkers established the City's duty to maintain the streets and passageways to the public. Having established that duty, the Parkers adduced enough information to create a factual dispute regarding a breach of the duty. Third, the Parkers gave a basis for the breach being the "proximate cause" of the accident. Finally, the compensable losses sustained by the Parkers are evident from Danieka's paralysis.

### III.

¶24. In conclusion, the trial court improperly analyzed the Parkers' claim in determining whether sovereign immunity was applicable. The trial court also erred in granting the City's motion for summary judgment because genuine issues of material fact remain. Since the majority does not recognize this, I respectfully dissent.

**SULLIVAN, P.J., BANKS AND WALLER, JJ., JOIN THIS OPINION.**