Clara WESALA, Appellant,

v.

CITY OF VIRGINIA, Respondent.

No. C7–86–218.

Court of Appeals of Minnesota.

June 24, 1986.

Review Granted Aug. 20, 1986.

Robert F. Berger, The Trenti Law Firm, Virginia, for appellant.

Gary J. Pagliaccetti, Cope & Peterson, P.A., Virginia, for respondent.

Richard P. Cox, Association Counsel, St. Paul, for amicus curiae Association of Minnesota Counties.

Heard, considered and decided by POPOVICH, C.J., and PARKER and CRIPPEN, JJ.

## OPINION

POPOVICH, Chief Judge.

Appeal is made from a summary judgment dismissing appellant's complaint alleging negligence by respondent city. Appellant claims the trial court erred because (1) genuine issues regarding causa-

tion exist and (2) respondent does not possess governmental immunity. We affirm.

## FACTS

On November 15, 1984, at 11:00 a.m., appellant Clara Wesala parked her car near the Virginia High School where she was going to perform volunteer work. It rained earlier that morning, but had cleared in 30° temperatures. The rain had frozen, creating icy conditions. The street had not been sanded.

Appellant left her car and proceeded down the sidewalk. Reaching a corner, she started to cross an intersection in the crosswalk. Because the crosswalk was completely covered with ice, appellant angled away trying to find better footing. She began to walk around a parked car while still walking on ice when she slipped and fell, sustaining serious injuries.

Appellant sued respondent City of Virginia alleging respondent

failed to use reasonable care to keep [the] street in a reasonable safe condition and negligently failed to remedy this dangerous condition, and was otherwise negligent.

Appellant requested damages in excess of $50,000 and costs and disbursements.

Respondent moved for summary judgment, alleging it was not negligent and was immune from any claim based on snow or ice conditions. Appellant answered respondent had waived governmental immunity by procuring insurance. The trial court entered summary judgment on January 10, 1986 and dismissed appellant's complaint, stating:

It appears to the Court that since this case involves the icy condition of a city street which was not a condition affirmatively caused by Defendant, Defendant is immune from liability for Plaintiff's damages.

Plaintiff maintains that Defendant has procured insurance, thereby making Minn.Stat. § 466.06 applicable to this case.

\*      \*      \*      \*      \*      \*

However, Defendant has not "procured insurance." Instead, it is a member of a self insurance pool, the League of Minnesota Cities Insurance Trust, which was organized under Minn.Stat. § 471.59 (dealing with the joint exercise of powers by governmental units) and Minn.Stat. § 471.981 (concerning self insurance coverage by political subdivisions). "Insurance" is defined in Minn. Stat. § 60A.02, self insurance being specifically excluded from the definition, as are the self insurance pools of Minn.Stat. § 471.981 \* \* \*.

Since Defendant has not procured insurance but is merely self insured, it has not waived its immunity for this claim involving snow and ice conditions on a city street. Defendant's motion for summary judgment should be granted.

Appeal is made from the January 10 judgment.

## ISSUE

Was summary judgment proper?

## ANALYSIS

■ 1. Appellant claims genuine issues of material fact bar summary judgment in this case. *See* Minn.R.Civ.P. 56.03. Those issues regard causation in appellant's slip and fall.

The applicable statute regarding the accident states a municipality is subject to tort liability except for

[a]ny claim based on snow or ice conditions on any highway or other public place, except when the condition is affirmatively caused by the negligent acts of the municipality.

Minn.Stat. § 466.03, subd. 4 (1984). Appellant argues respondent city affirmatively caused her fall because

the unusual slipperiness of the intersection resulted from vehicles stopping at the stop sign, a situation of which the City knew or should have known, but did nothing to prevent or to alleviate.

Respondent argues icy streets existed as a natural weather condition. It asserts it

performed no negligent acts to affirmatively cause the situation. Respondent submitted an affidavit of the Virginia Street Commissioner stating the city's streets are sanded on a priority basis. He classified Second Street South on which appellant fell as a middle priority roadway.

Respondent cites Minn.Stat. § 466.03, subd. 6, which provides governmental immunity for

[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.

*Id.* Respondent argues the decision regarding which streets to sand first is a discretionary function.

This court has stated:

[T]he decision as to whether a road should be plowed or whether the plows should be deployed on any given day falls within the discretionary function because it is made at the planning level. The job of plowing itself, however, is an operational function because it is simple and definite.

*Robinson v. Hollatz,* 374 N.W.2d 300, 302–03 (Minn.Ct.App.1985). The same standard applies to sanding streets. The distinction is between discretionary and ministerial functions. Ministerial functions do not trigger immunity. *See id.* at 303.

Here, appellant does not allege respondent improperly performed sanding at the involved intersection. Instead she claims respondent's affirmative ministerial act was inaction. Although discretionary immunity is to be narrowly construed, *id.* at 302, respondent's salient act was planning prioritized sanding and that act is clearly discretionary and preserves immunity.

■ 2. Appellant claims governmental immunity that otherwise may exist was waived when respondent obtained insurance from the League of Minnesota Cities Insurance Trust (LMCIT). She argues the trial court erred in concluding respondent's coverage constitutes self insurance and the city had not procured insurance waiving liability.

The governing body of any municipality may procure insurance against liability of the municipality and its officers, employees, and agents for damages resulting from its torts and those of its officers, employees, and agents, including torts specified in section 466.03 for which the municipality is immune from liability. * * * *The procurement of such insurance constitutes a waiver of the defense of governmental immunity* to the extent of the liability stated in the policy but has no effect on the liability of the municipality beyond the coverage so provided.

Minn.Stat. § 466.06 (1984) (emphasis added).

The trial court found self insurance to be excluded from the definition of insurance under Minn.Stat. § 60A.02.

"Insurance" is any agreement whereby one party, for a consideration, undertakes to indemnify another to a specified amount against loss or damage from specified causes, or to do some act of value to the assured in case of such loss or damage. A program of self insurance, self insurance revolving fund or pool established under section 471.981 is not insurance *for purposes of this subdivision.*

*Id.* § 60A.02, subd. 3 (emphasis added). Chapter 60A legislates regulation of the insurance industry by the Department of Commerce. Its definitions are not made applicable to chapter 466. *See id.* subd. 1. Chapter 466 does not define "insurance" for its purposes.

The LMCIT was created pursuant to Minn.Stat. § 471.981, subd. 3 setting up a pool among numerous political subdivisions to cover risks. Respondent made payments to the LMCIT, which in turn entered an agreement with commercial reinsurers to cover the insurance pool.

The Association of Minnesota Counties (AMC), writing as amicus curiae, attempted to explain why a city would join the LMCIT when protected by governmental immunity for certain risks. The AMC stated continuing erosion of sovereign immunity demands

cities insure themselves against "potentially catastrophic losses." What appear to be immunized tort claims may not be so considered by the courts. Cities insure through pools because commercial insurer rates are too expensive. The AMC argues cities do not invest in risk protection merely to increase risk exposure. To do so would be nonsensical.

Appellant claims the "LMCIT operates in much the same way as a commercial insurer" and member cities are not truly self insured because they do not bear entire risk. She argues the only difference is the LMCIT is a nonprofit organization and can therefore provide comparable risk coverage for lower cost. She asserts because of similar goals and operations of the LMCIT and commercial insurers, both coverages should be considered "insurance" for purposes of chapter 466.

We agree. The LMCIT is a risk spreading device. Individual municipal members are not truly self insured. Each member pays a premium to obtain certain coverage as represented in a "policy" or document that is given. Cities can select their own coverage, make certain exclusions and set certain deductibles.

As respondent argued, self insurance should not waive immunity under Minn. Stat. § 466.06 because one cannot "procure" something from oneself. But the LMCIT insurance pool is not self insurance. Cities such as respondent have procured risk coverage support from other members. Potential liability is not limited to premium amounts, but is extended to other limits. Minn.Stat. § 466.06 applies and governmental immunity is waived "to the extent of the liability stated in the policy but [respondent's insurance coverage with LMCIT] has no effect on the liability of the municipality beyond the coverage so provided." *Id.*

The parties disagree regarding the language of Minn.Stat. § 471.981, subdivision 1 which states:

A political subdivision may by ordinance or resolution of its governing body self insure against liability of the political subdivision and its officers, employees, agents and servants under chapter 466, sections 340.95 and 340.951 and other law, for damages resulting from its torts including torts for which the political subdivision has immunity and those of its officers, employees, agents and servants. A political subdivision may by ordinance or resolution of its governing body extend the coverage of its self insurance to afford protection in excess of any limitations on liability established by law but *unless expressly provided in the ordinance or resolution extending the coverage, the statutory limitations on liability shall not be deemed to have been waived.*

*Id.* (emphasis added).

Appellant argues "limitations on liability" refers to maximum monetary liabilities established in Minn.Stat. § 466.04. Respondent asserts the phrase includes governmental immunity as well. We agree with appellant that subdivision is clear on its face and does not include governmental immunity.

3. Although we conclude participation in the LMCIT constitutes waiver of governmental immunity, the sufficiency of appellant's underlying negligence claim must still be analyzed.

Respondent argues it cannot be negligent as a matter of law because it did not owe appellant a special duty. The city's argument is misplaced. The controlling Minnesota Supreme Court case states:

*We are not concerned with the legal duties owed by municipalities as owners and operators of* buildings, *roadways,* or other facilities. Nor are we concerned with the duty of a municipality to comply with its own safety codes as we were in *Lorshbough v. Township of Buzzle,* 258 N.W.2d 96 (Minn.1977). These duties to comply with the law are analogous to those owed by private persons, and a breach of such duties can be the basis of a lawsuit against the municipality just as it can be the basis of a lawsuit against private tortfeasors. We are, instead, considering the municipality's unique duty to enforce the law by taking steps to assure that *third* persons comply with the law.

*Cracraft v. City of St. Louis Park,* 279 N.W.2d 801, 803 (Minn.1979) (footnote omitted) (emphasis added).

The duty owed appellant was to act within a reasonable time to correct the icy conditions. *See Mattson v. St. Luke's Hospital of St. Paul,* 252 Minn. 230, 233, 89 N.W.2d 743, 745 (1958).

■ Appellant presented no evidence demonstrating breach of that duty. Her deposition testimony indicated only the rain had stopped earlier on the morning of her fall. No further allegation is made regarding the reasonableness of respondent's response to the frozen street considering passage of time or existing weather conditions. By failing to allege specific facts, appellant was properly the subject of summary judgment. *See* Minn.R.Civ.P. 56.05.

## DECISION

Although governmental immunity was waived, specific facts were not alleged to state a cause of action. The trial court properly granted summary judgment.

Affirmed.