627 So.2d 275 (1993)
Kathie MORGAN, Representative of the Wrongful Death Beneficiaries of Wyatt Morgan, Deceased
v.
The CITY OF RULEVILLE, Thomas Edwards and Clyde Pruitt.
No. 90-CA-1049.
Supreme Court of Mississippi.
September 2, 1993.
Rehearing Denied December 16, 1993.
*276 Charles Victor McTeer, Shirley C. Byers, McTeer & Byers, Greenville, for appellant.
Stephen L. Thomas, Jenny M. Virden, Lake Tindall Firm, Greenville, for appellee.
Before PRATHER, P.J., and PITTMAN and SMITH, JJ.
PRATHER, Presiding Justice, for the Court:

I. INTRODUCTION
In this sovereign immunity case, Kathie Morgan (decedent's plaintiff) appeals from the Circuit Court of Sunflower County's grant of the City of Ruleville's (defendant) motion for summary judgment. The trial court held that Ruleville, Edwards, and Pruitt were immune from suit. On appeal, Morgan asserts the following errors:
(1) The trial court improperly barred Morgan's claims of negligence and gross negligence by the City of Ruleville and its employees under Miss. Code Ann. § 11-46-9(c) and failed to apply the governmental/proprietary function distinction in determining whether the City waived its defense of sovereign immunity.
(2) The trial court failed to recognize that a municipality can be held liable in tort for the negligence or gross negligence of its employees.
(3) The trial court erred in finding that Ruleville's participation in the Mississippi Municipal Liability Plan (MMLP) was not sufficient to waive sovereign immunity.

II. STATEMENT OF THE CASE

A. Facts
The parties give different renditions of the facts in this case. Kathie Morgan claims that on May 30, 1987, her son, seven-year old Wyatt Morgan, paid a fee to enter the Ruleville city pool. Thomas Edwards was the manager of the pool and Clyde Pruitt was the lifeguard on duty. Both Edwards and Pruitt were at the pool on May 30, 1987 when the pool opened at 1:30 p.m. and closed at 4:30 p.m. After Wyatt did not come home that evening, Morgan called the police. Wyatt's body was found in the pool at 9:30 p.m. Morgan alleges that Wyatt drowned because the pool had an inadequate number of lifeguards and attendants, the attendants allowed too many swimmers to enter the pool at one time, and the attendants failed to use *277 the watch towers at the pool to adequately observe the swimmers.
Ruleville does not deny that Wyatt was found drowned in the city pool at 9:30 p.m. on May 30, 1987. However, it claims that Wyatt had surreptitiously entered the pool with some of his friends after the pool had closed and subsequently drowned. According to Ruleville, when the pool closed at 4:30 p.m., both Edwards and Pruitt made a careful examination of the pool and surrounding premises. Edwards again viewed the pool at 6 p.m. and found nothing. Ruleville argues that it was strongly rumored that Wyatt and some friends had "snuck into" the pool after dark, and that the autopsy done on Wyatt found his body unwrinkled, evidence of being in the pool a short while.

B. History of the Proceedings
On October 5, 1987, Morgan filed an action in the Circuit Court of Sunflower County charging the City of Ruleville and its employees, Edwards and Pruitt, with negligence and gross negligence in the operation of the city pool which resulted in the drowning of her son. In May of 1990, Defendants filed a Motion to Dismiss and, alternatively, a Motion for Summary Judgment alleging that: (1) the City and its employees could not be found liable because they were performing governmental and discretionary duties, respectively, under Miss. Code Ann. § 11-46-9(c)[1]; (2) the City was immune under traditional notions of sovereign immunity; (3) the City's participation in the Mississippi Municipal Liability Plan (MMLP) was not a purchase of insurance sufficient to waive immunity under Miss. Code Ann. § 21-15-6; (4) and even if the MMLP was insurance, it did not cover a claim barred by sovereign immunity. On June 11, 1990, the trial court entered summary judgment for Defendants, finding: (1) Miss. Code Ann. § 11-46-9(c) exempts the City from liability; (2) the City is immune under Miss. Code Ann. §§ 11-46-1(f) and 11-46-5, unless such immunity is waived by the purchase of insurance; and (3) the MMLP is not a purchase of insurance. After Morgan filed a motion to Alter or Amend the Judgment or, Alternatively, Set Aside the Judgment, and was granted some additional time for discovery, the trial court affirmed its grant of Defendants' Motion for Summary Judgment. On September 29, 1990, this appeal was taken by Morgan.

III. ANALYSIS
This Court conducts a de novo review of the record on appeal from a grant of a motion for summary judgment. Pace v. Financial Sec. Life of Miss., 608 So.2d 1135, 1138 (Miss. 1992); Short v. Columbus Rubber & Gasket Co., 535 So.2d 61, 63 (Miss. 1988).
A trial court may grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56. A fact is material if it "tends to resolve any of the issues, properly raised by the parties." Webb v. City of Newton, 583 So.2d 946, 949 (Miss. 1991) (citing Mink v. Andrew Jackson Casualty Ins. Co., 537 So.2d 431, 433 (Miss. 1988) (quoting Mississippi Road Supply v. Zurich-American Insurance Co., 501 So.2d 412, 414 (Miss. 1987))). The evidence must be viewed in the light most favorable to the non-moving party. If, in this view, the moving party is entitled to a judgment as a matter of law, then summary judgment should be granted in his favor. Otherwise, the motion should be denied. Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983).
The City, Edwards, and Pruitt claim that Morgan did not properly raise the issues now on appeal. This argument lacks merit. The issues that Morgan raises are all in her original complaint. Thus, on appeal, she does not raise new issues which should have *278 surprised Appellees. Morgan's appeal seeks reversal of the decision made by the trial court on summary judgment. The issues on appeal are properly before this Court.

Issue A: The trial court improperly barred Morgan's claims of negligence and gross negligence by the City of Ruleville and its employees under Miss. Code Ann. § 11-46-9(c) and failed to apply the governmental/proprietary function distinction in determining whether the City waived its defense of sovereign immunity.

1.
On October 5, 1987, Morgan filed suit against Ruleville and its employees. At the time, the law concerning sovereign immunity was governed by Miss. Code Ann. § 11-46-6 (Supp. 1987):
Section 4. This act, being Chapter 495, Laws of 1984, as reenacted and amended by Chapter 474, Laws of 1985, as amended by Senate Bill No. 2166, 1986 Regular Session, shall apply only to causes of action that accrue on or after July 1, 1987, as to the state, and on or after October 1, 1987, as to political subdivisions. Causes of action that accrue prior to July 1, 1987, as to the state or, prior to October 1, 1987 as to political subdivisions, shall not be affected by this act but shall continue to be governed by the case law governing sovereign immunity immediately prior to the decision in the case of Pruett v. City of Rosedale, 421 So.2d 1046, and by the statutory law governing sovereign immunity in effect from and after the passage of Chapter 474, Laws of 1985.
Section 11-46-6 instructs the Court to apply the sovereign immunity case law prior to Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982). However, in August of 1992, this Court decided the case of Presley v. Mississippi State Highway Commission, 608 So.2d 1288 (Miss. 1992).
In Presley, this Court held Section 11-46-6 unconstitutional. However, there is a question as to whether this decision should be applied retroactively or prospectively. Justice Banks, in Part II of Presley, wrote that the decision would apply only prospectively. His opinion was joined by three other justices. Justice McRae penned a dissent, arguing that Presley should be applied retroactively. Two justices joined him. Chief Justice Roy Noble Lee, joined by this justice, dissented to the entire opinion, arguing that Section 11-46-6 was not unconstitutional. Thus, as to Part II of the decision in Presley, four justices agreed to apply it prospectively, three justices wanted to apply it retroactively, and two justices dissented altogether. Because this vote can possibly be construed as five votes against Part II of Presley (three justices specifically dissenting to that section and two justices dissenting to all parts of the opinion), Presley's effect on this case must be closely scrutinized.
In Churchill v. Pearl River Basin Development District, 619 So.2d 900 (Miss. 1993), Justice McRae interprets Part II of the Presley opinion as having a plurality vote of four, but does not address whether Chief Justice Lee and Justice Prather's general dissent is a vote for retroactive application of Presley, a vote against applying Presley prospectively, or simply a non-vote because they did not reach the issue of retroactive or prospective application. In any event, assuming that Part II of Presley received a plurality vote, it still cannot be used as authority to apply Part I of Presley in the instant case. As the Justices in Churchill discussed, the U.S. Supreme Court noted that it is settled jurisprudence that "when no single rationale commands a majority, `the holding of the Court may be viewed as that position taken by those members who concurred in the judgment on the narrowest grounds.' Marks v. United States, 430 U.S. 188, 51 L.Ed.2d 260, 97 S.Ct. 990 (1977)." Churchill, 619 So.2d at 903 (citing Lakewood v. Plain Dealer, 486 U.S. 750, 764, 108 S.Ct. 2138, 2148, 100 L.Ed.2d 771, 787 n. 9 (1988)). The narrowest holding in Presley is simply that Miss. Code Ann. § 11-46-6 is unconstitutional. This holding is the only point of Presley which has precedential value.

2.
Miss. Code Ann. § 11-46-6 specifically states that Miss. Code Ann. § 11-46-9(c) does not apply. Thus, the trial judge was in error *279 when he applied Section 11-46-9(c) to the Motion for Summary Judgment. The judge should have applied the law as it stood before Pruett.
Under pre-Pruett law, whether a City enjoys the defense of sovereign immunity depends upon whether the alleged conduct occurred in the exercise of a governmental function or in the exercise of a proprietary function. Webb v. Jackson, 583 So.2d 946, 952 (Miss. 1991). Quite simply, a City performing a governmental function is immune from a negligence suit; a City performing a proprietary function is not immune from a negligence suit. Webb, 583 So.2d at 952; White v. City of Tupelo, 462 So.2d 707, 708 (Miss. 1984); Nathaniel v. City of Moss Point, 385 So.2d 599, 601 (Miss. 1980).
This Court in Anderson v. Jackson Municipal Airport Authority, 419 So.2d 1010, 1014-15 (Miss. 1982), discussed, at length, the differences between governmental and proprietary functions:
The classifications are broad, very general, and the line between the two is quite frequently difficult to define. Nevertheless, there are certain activities which courts choose to call "governmental" for which no liability is imposed for wrongful or tortious conduct. These are activities or services which a municipality is required by state law to engage in and to perform.[[2]]
On the other hand, there are activities in which a municipal corporation engages, not required or imposed upon it by law, about which it is free to perform or not. Such activities the courts call "proprietary or corporate". This Court has judicially construed other permissible "public and governmental" activities to be "corporate or proprietary."[[3]]
Id. at 1014.

3.
This Court holds that the City's operation of a public pool was a proprietary activity. Proprietary activities are those which, while beneficial to the community and very important, are not vital to a City's functioning. (Zoo, football stadium.) By engaging in a proprietary function, the City waived its sovereign immunity defense. The trial court's grant of summary judgment is reversed and this case is remanded for trial on Morgan's claim that the City and its employees were negligent in the operation of the pool.

Issue B: The trial court failed to recognize that a municipality can be held liable in tort for the negligence or gross negligence of its employees.
Although Morgan includes this contention in her "Statement of the Issues," she provides no support for it. An argument *280 without support need not be addressed by this Court. Accordingly, this argument is without merit.

Issue C: The trial court erred in finding that Ruleville's participation in the Mississippi Municipal Liability Plan (MMLP) was not sufficient to waive sovereign immunity.

1.
Under pre-Pruett law, a City is not subject to suit in the absence of express statutory authority. Strait v. Pat Harrison Waterway District, 523 So.2d 36, 38 (Miss. 1988). Miss. Code Ann. § 21-15-6 (1991) authorizes a municipality to purchase general liability insurance. If liability insurance is purchased, then the City waives its immunity to the extent of its policy limits.[4]

2.
The City of Ruleville is a member of the Mississippi Municipal Liability Plan (MMLP). Morgan claims that this constitutes a purchase of general liability insurance and is a waiver of the City's sovereign immunity. The City, on the other hand, claims that the MMLP is not general liability insurance but is really a form of self-insurance which protects the City but still allows its sovereign immunity to remain untouched.

3.
This Court has not yet addressed the question of whether participation in the MMLP is a waiver of sovereign immunity. See Webb, 583 So.2d at 952-953. Other courts in Mississippi, however, have discussed the MMLP in the context of Miss. Code Ann. § 21-15-6 and have ruled that it is not liability insurance sufficient to waive sovereign immunity. White v. City of Morton, Mississippi, 775 F. Supp. 962, 967-969 (S.D.Miss. 1990), rev'd on other grounds, 959 F.2d 539 (5th Cir.1992); C-1, a Minor v. City of Horn Lake, 775 F. Supp. 940, 951-952 (N.D.Miss. 1990); McGee v. Parker, 772 F. Supp. 308, 310-312 (S.D.Miss. 1991); Simmons v. City of Harrisburg, Civ.Act. No. 6-88-2376 (1990) (Circuit Court of Sunflower County); Dean v. Town of Moorehead, Civ.Act. No. 13,666 (1990) (Circuit Court of Sunflower County); Molden v. City of Moss Point, Civ.Act. No. 89-5118(3) (1990) (Circuit Court of Jackson County).

4.
A contract of insurance is defined in Miss. Code Ann. § 83-5-5 (1972) as "an agreement by which one party for a consideration promises to pay money or its equivalent, or to do some act of value to the assured, upon the destruction, loss, or injury of something in which the assured or other party has an interest, as to indemnity therefor." This kind of general liability insurance is sufficient to waive sovereign immunity. Self-insurance, however, is not sufficient to waive sovereign immunity. Morgan argues that the MMLP fits within the definition of insurance under Miss. Code Ann. § 83-5-5 and Ruleville argues that the MMLP is self-insurance.
The preamble of the by-laws of the MMLP explain the MMLP's purpose:

*281 The Mississippi Municipal Liability Plan (hereinafter referred as the "Corporation") was incorporated under the Mississippi Nonprofit Corporation Act on March 4, 1987. The general objectives of the Corporation are to formulate, develop and administer a program of self-insurance for municipalities in the State of Mississippi, to offer lower costs for liability coverage and to operate a loss control program to minimize exposure and risk to the municipality.
All funds contributed to the Corporation are public funds from municipalities of the State of Mississippi. In contributing said funds to the Corporation, the intent of the members is to create a reserve fund for the payment of claims which are not insured and which are not covered by immunity under Chapter 46, Title 11, Miss. Code Ann., 1972, as amended. It is not intended that any immunity of any member of the Corporation or its agents or employees is waived by the creation of such reserves since the reserves are not intended to pay any claims other than those not covered by immunity or by a policy of insurance.
The Corporation, and the Plan operated by the Corporation, shall consist of members which are municipalities authorized under Section 11-46-17, Miss. Code Ann. 1972, as amended, to become self-insurers and enter into inter-local agreements with other municipalities, their officers and employees while acting in their official capacities. The inter-local agreement adopted by each municipality when it becomes a member of the Corporation shall provide that each municipality thereby adopts rules, regulations, and bylaws promulgated by the Board of Directors for the Corporation. The Corporation and the Plan operated by the Corporation are not intended to operate as an insurance company, but rather are intended to be the mechanisms by which each municipality provides reserves for itself and its employees in their official capacities for uninsured liability claims not covered by immunity or by a policy of insurance.
The MMLP is a non-profit organization created to share the risk of liability of municipalities. As described by Judge Tom Lee of the Southern U.S. District Court of Mississippi in McGee v. Parker:
The program established by the MMLP is one of self-insurance for municipalities. Only municipalities are eligible for participation in the MMLP, and the funds which are contributed to the MMLP, as expressed in the by-laws, are paid exclusively from the funds of the participating municipalities; the amount of each municipality's contribution is calculated according to the municipality's population.
McGee, 772 F. Supp. at 311.
At least two other states have municipal risk-sharing pools similar to the MMLP. In Antiporek v. Village of Hillside, 114 Ill.2d 246, 102 Ill.Dec. 294, 499 N.E.2d 1307 (1986), the Illinois Supreme Court found a plan very similar to the MMLP to be self-insurance. Conversely, the Wesala v. City of Virginia, 390 N.W.2d 285 (Minn.App. 1986), a Minnesota Court of Appeals found a similar plan sufficient to waive the sovereign immunity.

5.
The by-laws of the MMLP clearly state that the purpose of the MMLP is to provide self-insurance for municipalities without waiving sovereign immunity. This Court agrees with Mississippi's U.S. District Courts and finds the MMLP to be self-insurance, insufficient to waive sovereign immunity.
AFFIRMED IN PART, REVERSED AND REMANDED IN PART FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
HAWKINS, C.J., and PITTMAN, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
BANKS, J., concurs with separate written opinion joined by DAN M. LEE, P.J.
McRAE, J., concurs in part, dissents in part with separate written opinion joined by SULLIVAN, J.
McRAE, Justice, Concurring in Part/Dissenting in Part:
The majority correctly finds that the City's operation of a public swimming pool is a proprietary activity and that sovereign immunity, *282 therefore, is inapplicable. Our decision in Pruett became law on July 1, 1984, three years prior to young Wyatt's death, and had not been modified or overruled. However, I disagree with the majority's indulgence in pre-Pruett analysis to reach its decision. I further disagree with its holding that the Mississippi Municipal Liability Plan is not an insurance policy. Moreover, the majority neglects to address the lower court's decision to grant immunity to Thomas Edwards and Clyde Pruett, apparently affirming the trial court's decision on that issue. This is in error. If the City is engaged in a proprietary function, its employees likewise are working in a proprietary function and do not enjoy any immunity. Their responsibilities appear to be ministerial in nature, thus affording them no immunity regardless of whether the city is engaged in a proprietary or a governmental function. Sullivan v. Sumrall, No. 90-244 (Miss. March 25, 1993).
We need not reach the question of whether the Mississippi Municipal Liability Plan (MMLP) falls within the statutory definition of "insurance" since no immunity exists for proprietary functions. However, since the majority has forged ahead and made the pronouncement that the MMLP is merely a form of self-insurance, that decision should be made only with full knowledge of what we are stating.
We have no reporting system for lower court decisions and should not cite them as precedent or authority. The majority, however, relies in part on circuit court cases from Sunflower and Jackson Counties to support its proposition that the MMLP is a form of self-insurance, and not an insurance policy. It, however, fails to note that we recently rejected an opportunity to decide this very issue in In re: The City of Bay St. Louis, 92-M-1135 (Miss. February 25, 1993). Judge Thomas, presented with a sovereign immunity question, stated that it was waived because the City's MMLP plan was indistinguishable from any other insurance policy. Bay St. Louis attempted to avoid trial by bringing an interlocutory appeal, asserting that it was immune from suit because the MMLP was only a self-insurance plan. This Court, including the majority in the case sub judice, denied that petition for interlocutory appeal, thus allowing the trial to proceed.
"Insurance" as defined by Miss. Code Ann. § 83-5-5 (1972) is an agreement in which:
one party for a consideration promises to pay money or its equivalent, or to do some other act of value to the assured, upon the destruction, loss, or injury of something in which the assured or other party has an interest, as to indemnity therefor.
By citing this definition of "insurance" and applying it to this case, one would have to question the extent of the consideration the majority has given this portion of its opinion. The MMLP is a non-profit corporation formed to pay certain claims against each city in accordance with its contract. MMLP operates in much the same way as a mutual insurance company such as State Farm or Mutual of Omaha, where the policyholders actually own the company. Each policyholder pays premiums into a reserve fund, spreading the risk among them. Further, the MMLP is no different from Blue Cross/Blue Shield, which we have classified as an insurance company even though Blue Cross/Blue Shield is organized pursuant to Miss. Code Ann. § 83-41-101 et seq. as a non-profit hospital, medical and surgical service corporation. Like participants in these insurance plans, members of MMLP pay an "initiation fee" and "dues," and, in turn, are issued certificates as evidence of their contract for coverage. The Illinois Court in Antiporek v. Village of Hillside, 114 Ill.2d 246, 102 Ill.Dec. 294, 499 N.E.2d 1307 (1986), upon which the majority also relies, based its finding that the state's Intergovernmental Risk Management Agency (IRMA) amounted to "pooled self-insurance, through formal agreement, of governmental entities which share the risks and costs of civil liabilities" on the language of the agency's bylaws. Id. at 251-252, 102 Ill.Dec. 294, 499 N.E.2d 1307. As distinguished from IRMA, MMLP is an independent non-profit corporation, not a governmental agency. Moreover, merely because MMLP, like IRMA, claims not to be a self-insurer and states in the preamble to its by-laws that the Corporation's objective is *283 "to formulate, develop and administer a program of self-insurance," does not render the plan a "self insurer." A wolf in sheep's clothing would, no doubt, purport to identify himself as a sheep.
In Wesala v. City of Virginia, 390 N.W.2d 285 (Minn. Ct. App. 1986), appeal dismissed, 401 N.W.2d 73 (Minn. 1987), the Minnesota Appeals Court rejected the argument that a plan similar to MMLP was a form of self-insurance.
Appellant claims that the "LMCIT operates in much the same way as a commercial insurer" and member cities are not truly self insured because they do not bear entire risk. She argues the only difference is the LMCIT is a nonprofit organization and can therefore provide comparable risk coverage for lower cost. She asserts because of similar goals and operations of the LMCIT and commercial insurers, both coverages should be considered "insurance" for purposes of chapter 466.
We agree. The LMCIT is a risk spreading device. Individual municipal members are not truly self insured. Each member pays a premium to obtain certain coverage as represented in a "policy" or document that is given. Cities can select their own coverage, make certain exclusions and set certain deductibles.
Id. at 287.
If we are to categorize the MMLP as a self-insurance plan, then we are stating the city's position as, "we're setting aside certain reserves, but we are not an insurance company." However, the MMLP operates identically to an insurance company, establishing reserves and spreading risk. Each member municipality contracts with the MMLP and pays a premium to enjoy this protection. Regardless of whether a premium is paid to a large commercial insurer or a private non-profit entity, there is insurance. We make no distinction between the coverage provided by a mutual insurance company and one owned by its shareholders. Why distinguish between the coverage provided by a commercial insurer and a self-proclaimed self-insurer? If it waddles like a duck and quacks like a duck, it is a duck. MMLP waddles and quacks just like an insurance company; therefore it is one. Accordingly, I dissent from that part of the majority opinion which erroneously defines the MMLP as a self-insurer.
SULLIVAN, J., joins this Opinion.
BANKS, Justice, Concurring:
I concur in the result reached by the majority. I write separately to note that I do not base my concurrence on "pre-Pruett" law, (Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982), and to withdraw from the premature consideration of the Mississippi Municipal Liability Plan (MMLP).
The least that we decided in Presley v. Highway Commission, 608 So.2d 1288 (Miss. 1992), is that the legislature cannot bind this Court to "pre-Pruett" law by simple reference. The common law of sovereign immunity, whether established before Pruett or evolving after Pruett, dictates the result reached today.
Because we have decided that the activity here involved is proprietary, we need not decide whether the city's immunity is waived by participating in the MMLP.
DAN M. LEE, P.J., joins this Opinion.
NOTES
[1] § 11-46-9. Exemption of governmental entity from liability on claims based on specified circumstances.

A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
(c) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]
[2] In Anderson, this Court listed the following actions as having been held to be governmental in nature:

the decision whether to place traffic control devices at an intersection; establishment and regulation of schools, hospitals, poorhouses, fire departments, police departments, jails, workhouses, and police stations; the adoption and enforcement of ordinances and regulations for the prevention of the destruction of property by fire and flood, and the manner and the character of the construction of the buildings.
Anderson, 419 So.2d at 1014, fn. 1 (citations omitted).
[3] This Court in Anderson listed the following actions as having been held to be proprietary in nature:

The operation of a city garbage dump; the construction and maintenance of sewage outlets to and from buildings; the maintenance and repairing of streets; the construction and maintenance of sidewalks; the operation and management of an electrical power plant by a municipality; the construction of a nuisance, such as a hog pond, close to the plaintiff's residence; the operation by the city of a fair, baseball park, or football stadium; the operation of a fire hydrant; the hauling of dirt and trash by the city; the operation and maintenance of a zoo; the creation of a dangerous situation regarding trees near sidewalks, streets or neutral areas; the operation of river landings for ingress and egress by boats; the construction and maintenance of a bridge over a gulley or ditch near a sidewalk or street; the construction and maintenance of a drain to provide for controlling rainfall; the offensive odors from a negligently operated sewage system; the supervision of the construction of a wall of a building not owned by the city; the overhead traffic control signal lights and stop signs at intersection.
Anderson, 419 So.2d at 1014-1015, fn. 2 (citations omitted).
[4] Miss. Code Ann. § 21-15-6 (1991) is as follows:

[Until October 1, 1991, Section 21-15-6 shall read as follows:]
Municipalities are hereby authorized, in the discretion of the governing authorities, to purchase general liability insurance coverage, including errors and omissions insurance for municipal officials and municipal employees.
Nothing contained herein shall be considered as a waiver of immunity in whole or in part as to any governmental function attempted or undertaken by the municipality except that where the municipality has liability insurance coverage as to any action brought against it, then such action may be maintained against such municipality, but any recovery in such action shall be limited solely to the proceeds of any such liability insurance coverage and a judgment creditor shall have recourse only to the proceeds of any such liability insurance coverage. Any judgment rendered in excess of the limits of such insurance shall, on motion of the court, be reduced as to the municipality to the amount of said liability insurance coverage but not as to any joint tort-feaser, if any. No attempt shall be made in the trial of any case to suggest the existence of any insurance which covers in whole of in part any judgment that may be rendered against any municipality.
[From and after October 1, 1991, Section 21-15-6 shall read as follows:]
Municipalities are hereby authorized, in the discretion of the governing authorities, to purchase errors and omissions insurance for municipal officials and municipal employees.