¶ 28. The chancery court had jurisdiction to hear this case under the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. §§ 11-46-1 to -23 (Rev. 2002 Supp. 2003). Notwithstanding my agreement that the policy in question is a form of a self-insurance plan, the majority has misinterpreted the MTCA in determining that liability here is capped at $50,000. In addition, direct action against MMLP was proper in this case. Accordingly, I dissent.
 CHANCERY COURT JURISDICTION
¶ 29. The Legislature has not precluded the chancery courts from hearing MTCA cases. See Miss. Code Ann. § 11-46-13(1). Therefore, for the reasons stated in detail in my dissents in City of Ridgeland v.Fowler, 846 So.2d 210, 214-19 (Miss. 2003) (McRae, P.J., dissenting), andLawrence County School District v. Brister, 823 So.2d 459, 461-64 (Miss. 2001) (McRae, P.J., dissenting), the chancery court had jurisdiction to hear this case.
 THE MMLP POLICY
¶ 30. At common law, the State and its subdivisions enjoyed complete immunity from suit through the judicial doctrine of sovereign immunity. In 1982, this Court did away with judicial sovereign immunity in Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982). As a result, the Legislature enacted Title 11, Chapter 46, commonly referred to as the Mississippi Tort Claims Act ("MTCA"). The MTCA provides sovereign immunity to the State and its subdivisions and allows for a limited waiver of that protection if certain statutory requirements are met. Miss. Code Ann. §§ 11-46-3, 11-46-5, 11-46-11. The MTCA is the exclusive remedy of a claimant alleging injuries due to the negligence of the State or its political subdivisions and employees. Miss. Code Ann. § 11-46-7. The Act further sets out certain acts for which a government entity and its employees may never be held liable. Miss. Code Ann. § 11-46-9. Even if a political subdivision or government entity has waived sovereign immunity for a certain act of negligence, the MTCA still provides a limitation of liability thereby capping the amount of applicable damages for which it may be held liable. Miss. Code Ann. §11-46-15.
¶ 31. Taylorsville is a political subdivision which falls under the protections of the MTCA. Miss. Code Ann. §§ 11-46-1(i), 11-46-3(1),11-46-5(1), 11-46-7(1). All statutory requirements have been met, and Taylorsville does not contest any issue with regard to the plaintiffs' satisfaction of these statutory requirements. Miss. Code Ann. §§11-46-11(1), (2), (3), (4). Immunity is waived to the extent of $50,000 for the negligent acts of Jones, a Taylorsville employee acting within the scope and course of employment. Miss. Code Ann. §§11-46-1(f); 11-46-5(1), (2), (3); 11-46-9(1)(c); 11-46-15(1)(a). Taylorsville concedes that it is liable for $50,000.
¶ 32. However, as the majority states, the issue then turns on the MMLP policy because recovery in excess of $50,000 is still possible depending on the true character of the policy and the terms provided therein. Section 11-46-15 provides that "[e]xcept as otherwise provided in *Page 946 
Section 11-46-17(4), in any suit brought under the provisions of this chapter, if the verdict which is returned when added to costs and any attorney's fees authorized by law, would exceed the maximum dollar amount of liability provided in subsection (1) of this section, the court shall reduce the verdict accordingly and enter judgment in an amount not to exceed the maximum dollar amount of liability provided in subsection (1) of this section." Miss. Code Ann. § 11-46-15(3) (emphasis added). It is this statement "except as otherwise provided in Section 11-46-17(4)" which creates to the present controversy. Miss. Code Ann. § 11-46-15(3) (emphasis added).
¶ 33. Section 11-46-17 provides for the creation of a Tort Claims Fund to cover claims made against government entities and subdivisions. Miss. Code Ann. § 11-46-17(1). However, this Section also gives municipalities and other government entities the option of opting out of the Tort Claims Fund and electing self-insurance, pooling agreements, and general liability insurance. Miss. Code Ann. § 11-46-17(3), (4), (5). The applicable portions of Section 11-46-17 specifically provide:
 (3) All political subdivisions shall, from and after October 1, 1993, obtain such policy or policies of insurance, establish such self insurance reserves, or provide a combination of such insurance and reserves as necessary to cover all risks of claims and suits for which political subdivisions may be liable under this chapter; except any political subdivision shall not be required to obtain pollution liability insurance. However, this shall not limit any cause of action against such political subdivision relative to limits of liability under the Tort Claims Act. Such policy or policies of insurance or such self-insurance may contain any reasonable limitations or exclusions not contrary to Mississippi state statutes or case law as are normally included in commercial liability insurance policies generally available to political subdivisions. All such plans of insurance and/or reserves shall be submitted for approval to the board. The board shall issue a certificate of coverage to each political subdivision whose plan of insurance and/or reserves it approves in the same manner as provided in subsection (2) of this section. Whenever any political subdivision fails to obtain the board's approval of any plan of insurance and/or reserves, the political subdivision shall act in accordance with the rules and regulations of the board and obtain a satisfactory plan of insurance and/or reserves to be approved by the board.
 (4) Any governmental entity of the state may purchase liability insurance to cover claims in excess of the amounts provided for in Section 11-46-15 and may be sued by anyone is excess of the amounts provided for in Section 11-46-15 to the extent of such excess insurance carried; provided, however, that the immunity from suit above the amounts provided for in Section 11-46-15 shall be waived only to the extent of such excess liability insurance carried.
 (5) Any two or more political subdivisions are hereby authorized to enter into agreement and to contract between and among themselves for the purpose of polling their liabilities as a group under this chapter. Such pooling agreements and contracts may provide for the purpose of one or more policies of liability insurance *Page 947 and/or the establishment of self-insurance reserves and shall be subject to approval by the board in the manner provided in subsection (2) and (3) of this section.
Miss. Code Ann. § 11-46-17(3), (4), (5) (emphasis added).
¶ 34. Taylorsville elected not to participate in the Tort Claims Fund and therefore chose to obtain a MMLP policy. The MMLP policy is not an ordinary liability insurance policy as provided for in Section11-46-17(4). See Perry v. Nationwide Gen. Ins. Co., 700 So.2d 600, 601 (Miss. 1997); McCoy v. South Cent. Bell Tel. Co., 688 So.2d 214 (Miss. 1996). Since the policy is not per se "liability insurance", then it must be classified as either a form of "self-insurance or reserve" and/or "pooling agreement policy."
¶ 35. In Morgan v. City of Ruleville, 627 So.2d 275 (Miss. 1993), this Court addressed whether a City's participation in MMLP was a purchase of insurance sufficient to waive sovereign immunity under Miss. Code Ann. § 21-15-6. Id. at 280.[3] This Court found that the MMLP policy was a form of "self insurance", therefore sovereign immunity was not waived under Section 21-15-6. Id. at 281. In so finding, this Court characterized the MMLP as a "risk-sharing pool." Id. (citing Antiporekv. Village of Hillside, 114 Ill.2d 246, 499 N.E.2d 1307 (1986); Wesalav. City of Virginia, 390 N.W.2d 285 (Minn. Ct. App. 1986)).
¶ 36. However, at the time of the Morgan decision, the MTCA was not applicable since it did not take effect as to the liability of political subdivisions until "from and after October 1, 1993." Miss. Code Ann. § 11-46-5(1). This Court's characterization of the MMLP policy as "self insurance" was not in regards to those insurance options provided in Section 11-46-17. If we are to follow Morgan and find the MMLP policy in question to be "self insurance" and/or a "pooling agreement" then the present policy fits under the description of Section 11-46-17(3) or (5) which provides municipalities with the option to provide self insurance through reserves or a pooling agreement.
¶ 37. Morgan is applicable for the holding that a MMLP policy is not a private insurance policy. However, beyond that point Morgan and this case are different. Here we are dealing with a "self insurance" and/or "pooling agreement" which specifically lays out the terms of coverage which statutorily may provide for excess coverage over and above the $50,000 statutory liability. The language which specifically so provides for this excess is found in § 11-46-17(3) which states that "this shall not limit any cause of action against such political subdivision relative to limits of liability under the Tort Claims Act." This simple sentence proves that the Legislature contemplated and indeed did plan for instances where "self insurance" policies would provide for recovery being the $50,000 statutory limit.
¶ 38. It is clear from precedent that the MMLP policy is a form of "self-insurance" As such, the maximum statutory liability of $50,000 under the MTCA does not operate as a cap when the applicable policy provides for payment beyond the $50,000.
 DIRECT ACTION AGAINST INSURANCE COMPANY
¶ 39. The majority concludes that direct action may not be maintained against MMLP in this case because the question is *Page 948 
not coverage, but the extent of coverage. However, if it looks like a duck and it walks like a duck and quacks like a duck, I dare say it is indeed a duck. This is a question of coverage and, therefore, is a proper basis for a direct action pursuant to M.R.C.P. 57.
¶ 40. The comment to Rule 57 states that:
 The two principal criteria in favor of rendering declaratory judgments are: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.
Titan Indem. Co. v. Williams, 743 So.2d 1020, 1023 (Miss. Ct. App. 1999) (quoting M.R.C.P. 57 cmt.).
¶ 41. The case at bar fits squarely within these criteria. The majority characterizes MMLP's argument as simply one of the extent of coverage. However, this is not a case where an insurer is accepting coverage, but claiming that the policy limit would be met. Nor is this a case where an insurer is accepting coverage but waiting to see the amount of damages set by the jury.
¶ 42. Instead, here an insurer is claiming that despite a policy limit of $500,000, the Mississippi Tort Claims Act relieves it from paying in excess of $50,000. Such a determination fits within the criteria established for Rule 57, and a direct action in this case was proper.
¶ 43. One final point bears mentioning. I am disheartened that the majority is so inclined to let the defendant in this case to have its cake and eat it too. In one breath the majority tells us that the defendant is not an insurance company and, therefore, it may not be treated as such. Thus, the $50,000 statutory cap may not be exceeded.
¶ 44. However, in the next breath the majority does an about face and tells us that the defendant is entitled to the same treatment as an insurance company and, therefore, a direct action was improper. These two conclusions are contradictory.
¶ 45. If the defendant is an insurer, then the statutory cap is inapplicable. However, if the defendant is not an insurer, then it is not guaranteed the same benefits of an insurer and a direct action may be maintained.
¶ 46. For these reasons, I would affirm the chancery court's judgment and remand this case for further proceedings in the chancery court.
¶ 47. Accordingly, I dissent.
[3] From and after October 1, 1991, Section 21-15-6 was revised and now provides that "[m]unicipalities are hereby authorized in the discretion of the governing authorities, to purchase errors and omissions insurance for municipal officials and municipal employees."