*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1306**

Lois St. Aubin,
Appellant,

vs.

Casey's Retail Company d/b/a Casey's General Store,
Respondent.

**Filed February 29, 2016
Affirmed
Rodenberg, Judge**

Hennepin County District Court
File No. 27-CV-14-14285

Michael A. Bryant, Terrance J. K. Crumley, Bradshaw & Bryant, PLLC, Waite Park, Minnesota (for appellant)

James M. Susag, R. Henry Pfutzenreuter, Larkin Hoffman Daly & Lindgren, Ltd., Minneapolis, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

Appellant Lois St. Aubin challenges the summary-judgment dismissal of her cause of action for negligence arising from her slip and fall in the parking lot of respondent's

business establishment. Because respondent did not owe a duty to remove ice during ongoing winter precipitation, we affirm.

**FACTS**

Appellant is a 78-year-old woman who lived in Marshall, Minnesota until 2013. On March 6, 2010, appellant left her residence, wearing tennis shoes, intending to purchase a box of doughnuts at Casey's General Store (the store). The store is owned and operated by respondent and is located approximately one mile from where appellant then lived. Appellant described the weather that morning as "misty, it had rained and then it was froze[n]." Meteorological reports confirm that 0.02 inches of precipitation had fallen by 7:00 a.m. that morning and an additional 0.18 inches had fallen by 7:00 a.m. on March 7, 2010. Appellant noticed the icy and slippery conditions upon leaving her residence.

Appellant arrived at the store at approximately 6:45 a.m. and parked her vehicle in the parking lot "off to the right of the store." There were no other vehicles parked nearby upon her arrival. Appellant stated that "[i]t was freezing rain because that's how it got all icy, but when I went to Casey's, it was like a mist falling." Appellant described the parking area as "icy" and "slippery" as she walked across it. Appellant knew the parking lot was icy because she observed the "glare" of ice on the parking area. Appellant walked slowly across the parking lot because "[y]ou always take precautions when there's ice."

Appellant purchased her doughnuts and left the store. She walked along the same path she had taken to enter the store and discovered that vehicles had parked on both

2

sides of her own vehicle. One of the vehicles was parked about 12 to 15 inches away from the driver's side of her vehicle. While still holding on to her doughnuts and her billfold, appellant attempted to enter her vehicle through the driver's side, found that she "couldn't open the door real wide," and fell down.

A passerby witnessed appellant's fall and told one of the store's assistant managers. The assistant manager left the store and attempted to assist appellant. Appellant declined the assistant manager's offer to help, and she drove home. Appellant's son persuaded her to go to the emergency room later that morning. Appellant noted that the emergency room was "busy busy busy with people from falls."

The store manager completed a "Customer Investigation Accident Report" after appellant's fall. The report described that morning's weather as "[f]reezing rain" and noted that appellant was wearing tennis shoes. The report also indicated that an employee "had put salt down" earlier that morning and "added more after the accident."

Respondent employs a third-party administrator, EMC Risk Services, Inc., (EMC) to investigate potential claims. An EMC investigator interviewed the assistant manager on March 9, 2010. The assistant manager described the weather to the investigator as having been "raining or drizzling and it was kind of like freezing at the time," resulting in "ice everywhere." In light of these conditions, the assistant manager "salted the sidewalks and you know, the front area of the parking lot" shortly before the store opened at 6:00 a.m., noting that "sometimes it's hard to get everything, you know, every little spot."

The assistant manager told the investigator that appellant entered the store, purchased some doughnuts, and spoke with another individual "about the rain and how it was slippery out" before exiting the store. The assistant manager stated that she went out to help appellant after a customer told her that appellant had fallen in the parking lot. Appellant declined an ambulance, telling the assistant manager that "she would see how she felt after a little while."

The investigator also interviewed appellant on March 10, 2010. At that time, appellant described the weather on the morning of the incident as "[r]aining and icy." Appellant noted that "it was like drizzling with ice . . . because . . . the temperature was right at the freezing mark." Appellant acknowledged knowing that "it was icy all over." Appellant agreed that she had spoken with individuals inside the store about "all the rain and ice" and how "you got to be careful."

Appellant sued, claiming that respondent was negligent in maintaining the parking lot and seeking to recover damages for injuries from her fall. Respondent moved for summary judgment. The district court granted respondent's motion for summary judgment because: (1) respondent had no duty to remove the ice during the ongoing precipitation; and (2) the ice was an open-and-obvious danger. This appeal followed.

**D E C I S I O N**

We review de novo a district court's grant of summary judgment, determining "whether the district court properly applied the law and whether . . . genuine issues of material fact . . . preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010). No genuine issue exists "[w]here

4

the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997) (quotation omitted). "[W]hen the nonmoving party bears the burden of proof on an element essential to the nonmoving party's case, the nonmoving party must make a showing sufficient to establish that essential element" to survive summary judgment. *Id.* at 71. We recognize that "summary judgment is a blunt instrument and is inappropriate when reasonable persons might draw different conclusions from the evidence presented." *Osborne v. Twin Town Bowl, Inc.*, 749 N.W.2d 367, 371 (Minn. 2008) (quotations and citations omitted).

"To recover on a claim of negligence, a plaintiff must prove: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) that the breach of the duty was a proximate cause of the injury." *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014). "[A] landowner has a duty to use reasonable care for the safety of all such persons invited upon the premises." *Louis v. Louis*, 636 N.W.2d 314, 318 (Minn. 2001) (quotations omitted). This duty is "not absolute," however. *Id.* at 319.

In *Mattson v. St. Luke's Hosp. of St. Paul*, the Minnesota Supreme Court held that "a business establishment or other inviter may, without violating its duty to exercise reasonable care for the safety of business guests or invitees, await the end of a freezing rain or sleetstorm and a reasonable time thereafter before removing ice and snow . . . ." 252 Minn. 230, 233, 89 N.W.2d 743, 745 (1958).

> The basic reason for this rule is that during the continuance of
> a freezing rain, snow, and sleetstorm it is inexpedient and
> impractical to remove from exposed walks and steps icy and

5

slippery conditions, or to take other corrective action such as the spreading of sand, ashes, or similar abrasives. Since a storm produces slippery conditions as long as it lasts, it would be unreasonable to expect the possessor of the premises to remove the freezing precipitation as it falls. Reasonable care requires only that the possessor shall remove the ice and snow, or take other appropriate corrective action, within a reasonable time after the storm has abated.

*Id.*; *see also Niemann v. Nw. Coll.*, 389 N.W.2d 260, 262 (Minn. App. 1986) (holding that a party "was not duty bound to clean the sidewalks until a reasonable period of time after the storm ended"), *review denied* (Minn. Aug. 27, 1986). Citing *Mattson,* the district court concluded that respondent "had no duty to address the icy parking lot since the freezing precipitation was still falling."

Appellant argues that the district court erred in applying *Mattson*, because the inclement weather was insufficiently severe to be considered a "storm." But *Mattson* holds that the possessor of land has no duty to "remove freezing precipitation as it falls," regardless of the amount or rate of that precipitation. *Mattson*, 252 Minn. at 233, 89 N.W.2d at 745; s*ee, e.g.*, *Frykman v. Univ. of Minn.-Duluth*, 611 N.W.2d 379, 381 (Minn. App. 2000) (upholding the district court's refusal to apply the *Mattson* rule when "[t]he evidence permitted a finding that the weather incident or event [producing measurable and later trace amounts of freezing rain] had lapsed [at the time of Frykman's fall]"); *Wesala v. City of Virginia*, 390 N.W.2d 285, 289 (Minn. App. 1986) (applying the *Mattson* rule and noting that "[t]he duty owed to appellant was to act within a reasonable time to correct the icy conditions" that occurred after some early-morning rain had stopped and frozen over at the time of plaintiff's fall), *review granted* (Minn. Aug. 20,

6

1986), *review dismissed* (Minn. Feb. 24, 1987). Appellant appears to advocate that we adopt a rule of law limiting the application of *Mattson* to cases involving heavy precipitation. There is no such rule of law, and it is not our proper role to adopt one. *See Lake George Park, L.L.C. v. IBM Mid-America Emps. Fed. Credit Union*, 576 N.W.2d 463, 466 (Minn. App. 1998) (stating that "[t]his court, as an error correcting court, is without authority to change the law"), *review denied* (Minn. June 17, 1998); *Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn. App. 1987) ("[T]he task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court."), *review denied* (Minn. Dec. 18, 1987).

Here, the record is clear that the precipitation was ongoing at the time appellant fell. This fact is not disputed. Appellant noted in her statement taken four days after the fall that it was "raining and icy" and "drizzling with ice . . . [because] the temperature was right at the freezing mark" on the day she fell. Her deposition testimony was that "it was misty, it had rained, and then it was froze[n]." Appellant's statements are corroborated by both the assistant manager's statement that "[i]t was raining or drizzling and it was kind of like freezing at the time" and meteorological reports indicating that 0.02 inches of precipitation had fallen by 7:00 a.m. on the day of the incident. Additionally, similar to the unmeasured icy conditions in *Mattson*, the icy conditions appear to have affected many people in the area, as reflected in appellant's statement that the emergency room was "busy busy busy with people from falls" on the morning of her fall. *See Mattson*, 252 Minn. at 235, 89 N.W.2d at 746 ("The freezing sleetstorm rendered slippery not only defendant's outside entrance steps but also all other exposed

walks and places within the city."). Based on the absence of any genuine issue of fact, the district court did not err in applying *Mattson*.

Appellant also argues that, because respondent attempted to salt the walkways during the ongoing precipitation, it assumed a duty to do so with reasonable care. This argument is unavailing. Minnesota law is clear that taking corrective measures during an ongoing precipitation event does not change the premises owner's duty. *Mattson*, 252 Minn. at 233, 89 N.W.2d at 745. A rule to the contrary would be against public policy because it would deter a landowner from trying to combat the elements during inclement weather for fear that the landowner would be held to a higher standard of care than if he or she had waited out the inclement weather.

Finally, appellant argues that the passage of time has rendered *Mattson* obsolete. But appellant cites no caselaw for this proposition, and, as an error-correcting court, we are required to follow the Minnesota Supreme Court's precedent. *Jendro v. Honeywell, Inc.*, 392 N.W.2d 688, 691 n.1 (Minn. App. 1986), *review denied* (Minn. Nov. 19, 1986).

Because the district court correctly determined that *Mattson* applies to this case, and properly dismissed appellant's complaint under Minn. R. Civ. P. 56, we do not address the district court's alternative basis for granting summary judgment, that the danger appellant encountered was open and obvious. *See Myers v. Price*, 463 N.W.2d 773, 775 (Minn. App. 1990) (summary judgment will be affirmed if it can be sustained on any grounds), *review denied* (Minn. Feb. 4, 1991).

**Affirmed.**